JACKSON et al. v. McALLISTER et al.
(No. 8538.)

(Court of Civil Appeals of Texas. Ft. Worth. April 7, 1917. Rehearing Denied May 12, 1917.)

1. MANDAMUS ⊙═▷143(2) — LACHES—CONTROL OF COMMISSIONERS' COURT—ROAD BONDS.

Where, after district road bonds had been issued, approved by the Attorney General, and registered by the comptroller, under Rev. St. 1911, arts. 628, 631, 632, the commissioners' court, on petition of a controlling number of the voters of the district, made an order determining that the bonds could not be sold at par, repealing the order authorizing their issuance and canceling the bonds, mandamus would not lie, nearly five years after the original election, to compel reissuance of the bonds on the ground the rescinding order was without authority, the record showing that the Attorney General canceled and withdrew his approval of the bonds after their cancellation, and being silent as to whether he would reapprove them if again issued, and whether the roads, etc., within the district were as they existed at the date of the original election.

[Ed. Note.—For other cases, see Mandamus, Cent. Dig. § 285.]

2. HIGHWAYS ⊙═▷165 — POWERS OF COMMISSIONERS' COURT.

By Rev. St. 1911, art. 2241, as to powers of commissioners' courts over public roads and highways, such courts are given general jurisdiction.

3. COUNTIES ⊙═▷182—BONDS—POWER OF COMMISSIONERS' COURT.

Where district roads bonds are issued under Rev. St. 1911, arts. 628, 631, 632, the commissioners' court, as incidental to the express power over roads given by article 2241, and the "control" and "custody" of the bonds given to the court by article 632, has power to determine the manner and methods to be adopted in order to effect a sale, and when it is not reasonably possible to sell them at par.

[Ed. Note.—For other cases, see Counties, Cent. Dig. § 285.]

Appeal from District Court, Johnson County; O. L. Lockett, Judge.

Mandamus by J. W. McAllister and others against B. J. Jackson and others. Judgment for plaintiffs, and defendants appeal. Reversed, and judgment entered.

Walter & Baker and S. C. Padelford, all of Cleburne, for appellants. Ramsey & Odell and Kugle & Warren, all of Cleburne, for appellees.

CONNER, C. J. On June 4, 1912, 126 resident property taxpaying voters residing in a certain defined territory in Johnson county presented to the commissioners' court of that county, pursuant to the terms of article 628 of our Revised Statutes, a petition for an election to be held in said district to determine whether or not bonds of such district should be issued in the sum of $75,000 for the

purpose "of constructing, maintaining, or operating macadamized, graveled or paved roads and turnpikes in said district, or in aid thereof," and "also as to whether or not a tax shall be levied upon the property of said * * * defined district * * * for the purpose of paying the interest on said bonds and to provide a, sinking fund for the redemption thereof."

On the same day said petition was duly heard and considered by said commissioners' court, and an order was duly entered calling for the election as prayed for to be held by the qualified voters in said district on July 18, 1912. The order described the district by metes and bounds, designated the place at which the election should be held, appointed a manager for the election, etc., and the clerk of the commissioners' court was ordered to issue and have published a notice of the election, as provided by law.

The notice of the election was duly published, and the election, so far as the record shows, was duly held at the time and place designated in the order, after which, on July 22, 1912, as appears from an order then duly entered at a special meeting of the commissioners' court, the returns of the election were duly canvassed, and it was found that there were cast at said election 232 votes, of which 163 were cast "for the bonds and tax" and 69 were cast "against the bonds and tax." The order further recites that, it having appeared to the court that the proposition to issue said bonds and levy said tax had been sustained by a two-thirds majority of the qualified taxpaying voters at said election, the said defined district be constituted road district No. 2 of Johnson county, to have "all the corporate and other rights as such permitted and allowed by law."

On August 15, 1912, at a regular meeting of said court, an order was duly entered providing for the issuance of the bonds, fixing the rate of interest, adopting the form of the bonds, and levying a tax of 54 cents on each $100 valuation of taxable property in said district to provide for the payment of interest and the creation of a sinking fund for the redemption of the bonds. Thereafter, in accordance with said order, said bonds were duly issued, dated October 1, 1912, signed by the county judge of Johnson county, countersigned by the county clerk and registered with the county treasurer of said county. Later said bonds were submitted to the Attorney General of Texas for his approval and on April 11, 1913, a certificate was duly executed by him to the effect that said bonds had been submitted to him, and that, after careful examination, he found, among other facts, the following:

"That said road district No. 2 was, at the time of the passage of the order authorizing the issuance of said bonds, legally established; that the order authorizing the issuance of said bonds was in proper form and legally passed; that

---

⊙═▷For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

said bonds are in proper form, and in accordance with the order authorizing their issuance, and all the requirements of the law under which they were issued had been complied with;" that it was his judgment, and he so found, that said bonds were issued in conformity with the statutes and laws of the state of Texas; and that they were valid and binding obligations upon said road district No. 2 of Johnson county, Tex.

On June 8, 1913, said bonds were presented to the comptroller of the state of Texas for registration, and by him duly registered. On June 9, 1913, the day following the date on which said bonds had been registered by the comptroller, an order was entered by the commissioners' court of Johnson county, Tex., reciting that it had on that day heard a petition of 235 property taxpaying citizens and qualified voters of said road district No. 2, requesting the court to repeal and cancel the order of the court for the issuance of said bonds; that none of said bonds had been sold, and that said commissioners' court had been unable to sell the same, or any of the same, at par and accrued interest, and that it was the opinion of the court that the same could never be so sold, and that after due consideration of said petition it was accordingly ordered that the order of August 15, 1912, authorizing the issuance of said bonds, be repealed, and that said bonds be destroyed and the taxes collected for the purpose of paying the interest on said bonds and creating a sinking fund for the same be refunded to the taxpayers who had paid their taxes. None of said bonds were ever sold, but in accordance with the order last referred to, all of the same were marked "canceled," and are now in the custody of the county treasurer of Johnson county.

On September 6, 1915, the appellees in this case presented to the commissioners' court of Johnson county a petition for the reinstatement and reissuance of said bonds. The petition was signed by J. W. McAllister and 134 others. On September 14, 1915, it seems that this petition was considered by the commissioners' court, and by that court an order was made to the effect that the petition for the reissuance of said bonds had been duly considered, but that, it appearing to the court that a majority of the qualified taxpaying voters of road district No. 2 were opposed to reissuing said bonds, the petition was denied. Thereupon the appellees, resident taxpaying voters residing within the limits of road district No. 2, instituted this suit against B. Jay Jackson, as county judge and the four county commissioners, county clerk, and county treasurer, of Johnson county, and against said road district No. 2, for a mandamus to compel the reissuance of said bonds, on the ground that the order of the commissioners' court, purporting to rescind the order authorizing the issuance and the attempted cancellation of said bonds, was without authority, null, and void. The appellees by petition alleged in detail the facts

upon which the petition was based substantially as hereinbefore set out.

The appellants J. T. Steward and ten others obtained leave of the court to intervene in the cause as property taxpaying resident voters of said district, and joined with the other named appellants in filing an amended answer in which, briefly stated, the defendants, besides the general denial, specially denied that road district No. 2 had been duly incorporated, and attacked the regularity and validity of all of the proceedings preceding the election hereinabove mentioned, alleging that the petition for the election had been fraudulently procured and presented without notice to the defendants; that the defendants had no notice of the election; that their property was so situated as to not be benefited by the improvement of any road in the district; that the court prior to the election had not decided whether roads or turnpikes should be constructed, maintained, or operated in said district, and hence that the voters did not know specifically the purpose for which bonds were to be issued, etc. The defendants further pleaded that, after the bonds had been issued and approved by the Attorney General and registered by the comptroller, the commissioners' court had offered and advertised them for sale, after due and reasonable notice; and, after all due and proper efforts were made to sell the same by the county judge, it was found that they were unable to do so at par. The answer further set up the petition and order of cancellation, etc., as hereinbefore recited.

The court sustained numerous special exceptions to the answer, and upon a hearing of the evidence peremptorily instructed the jury to find for the plaintiffs, which the jury did, and it was thereupon decreed that the order of the commissioners' court canceling its previous order for the issuance of the bonds, be set aside and adjudged to have been made without authority. The judgment further decreed that the county judge and the commissioners, naming them who constituted the commissioners' court of Johnson county—

"pass an order and enter same upon the minutes of said court, rescinding and canceling said order or resolution of date June 9, 1913, and that the defendant road district No. 2 of Johnson county, Tex., and the defendants, the commissioners' court of Johnson county, Tex. (again naming the members of the court), are ordered and directed to reissue the bonds of said road district No. 2 of Johnson county, Tex., to be dated October 1, 1912, in the sum of $75,000, of the same denomination, bearing the same rate of interest, and otherwise substantially the same as the bonds heretofore issued by and for and in behalf of said road district No. 2 of Johnson county, and attempted to be canceled by said order above referred to."

It was further ordered that after the reissuance of the bonds as directed in the judgment the same be signed by B. Jay Jackson, county judge, and attested by E. F. Metz, as county clerk of Johnson county, with the seal of the commissioners' court of

Johnson county impressed thereon, and that the bonds be registered by the county treasurer. The judgment further directed that the commissioners' court should levy a tax on all of the taxable property located in said road district No. 2 for the year 1916 and years subsequent thereto, for the purpose of paying interest and creating a sinking fund for the payment of the bonds. It was further ordered that the bonds be submitted to the Attorney General for his approval and to the Comptroller of Texas for registration, as provided by law, after which the bonds should be offered for sale to the highest bidder for cash, after due notice, as required by law, for not less than their par value, and it was ordered that the writ of mandamus and such other writs and processes as might be necessary to secure the execution and compliance with the terms of the decree be issued as against all the defendants, and that the plaintiffs recover all costs.

From the decree so entered the defendants have duly appealed to this court, and present some 47 assignments of error.

[1] In the view we have taken of the case we deem it unnecessary to discuss and determine the many questions so interestingly and ably presented in the briefs of counsel. For the most part these questions relate to the validity of the proceedings which antedate the original order declaring the result of the election in said road district No. 2, and ordering the issuance of the bonds and the levy of the tax as determined by the election. The statute (article 631) provides that if after the result of an election of the kind is known, it shall appear to the commissioners' court of the county that a two-thirds majority of the vote cast at such election were in favor of the issuance of bonds, then it shall be the duty of said commissioners' court, as soon thereafter as practicable, to issue said bonds on the faith and credit of the county, or of the defined district within which the election was held. But it must be observed that the case presented is not one where the commissioners' court under such circumstances have refused to issue bonds. In the case before us the bonds were in fact issued, were in fact presented to and approved by the Attorney General, and registered with the comptroller, as required by law. Thus far no complaint is made in behalf of appellees of the proceedings of the commissioners' court; on the contrary, appellees affirm that all of these proceedings, regardless of the objections urged by appellants, were in all things regular and lawful. It further appears from allegations and from the evidence that between the date of the issuance of the bonds, viz. on October 1, 1912, and the date upon which the bonds were canceled, as complained of, to wit, on the 9th day of June, 1913, the county judge, by correspondence with dealers in such securities and perhaps otherwise, made efforts

to sell the bonds, but was unable to sell or secure an offer therefor at par, as was specifically required by article 632 of the Revised Statutes. Said article also specifically requires that:

"Such bonds, when so issued, shall continue in the custody of, and under the control of the commissioners' court of the county in which they were issued."

The record also shows that after the cancellation of the bonds under consideration by the commissioners' court of Johnson county, the Attorney General of Texas canceled and withdrew his approval thereof, and the record is entirely silent as to whether or not he would reapprove said bonds in event they were again issued, as required by the order of the district court. The record is also silent whether the roads, if any, and the other conditions, whatever they were, within road district No. 2, are at this time as they existed at the date of the election stated. The question, therefore, with which we are confronted is, not whether the commissioners' court could in the first instance arbitrarily refuse to issue the bonds, but whether at this time, some 4 years and 8 months after the original election, we shall approve the judgment ordering their reissuance. We think not.

[2, 3] The statute (Revised Statutes, art. 637) provides that for the purposes intended the defined district accepting provisions of the law by voting the tax authorized shall be "made and created a body corporate, which may sue and be sued in like manner as counties." The law gives no express definition of its purposes or powers, and designates no other person or body than the commissioners' court to act for or in any manner represent the corporate body thus established. On the contrary, the chapter relating to the subject merely commits to the commissioners' court the duty of issuing the bonds, of retaining their custody until sold, and of making the proper disposition of the funds, etc. By other statutes the commissioners' courts are specially given power to "lay out and establish, change, and discontinue public roads and highways." See article 2241, par. 3. The jurisdiction thus given is general. Allen v. Parker Co., 23 Tex. Civ. App. 536, 57 S. W. 703; Howe v. Rose, 35 Tex. Civ. App. 328, 80 S. W. 1023; McCown v. Hill, 73 S. W. 851; Gaines v. Newbrough, 12 Tex. Civ. App. 466, 34 S. W. 1048. If then the fact was, as there is evidence tending to show, that the bonds theretofore issued could not be sold at par, and if the further fact was as recited in said order of cancellation that more than two-thirds of the qualified voters of road district No. 2 appeared before them and sought the cancellation of the bonds, then must it be said that the commissioners' court and the Attorney General were wholly without discretion or power to meet the situation? Was the commissioners' court under

all of the circumstances to remain supine and undertake to retain the bonds in their negotiable form so as to present the possibility of reaching an innocent third person? Or may the court under conceivable circumstances enter an order canceling the bonds? We are of the opinion that it cannot be said that no such power existed. It is true there is no provision in the law so authorizing, but the commissioners' court is undoubtedly the governing body for county business, and the only designated body for the control of road district No. 2. The commissioners' court have been given express power and general jurisdiction over the roads of the county and of the precincts; it can order the laying out, the opening, or discontinuance of such roads, and, as it seems to us, it will be unreasonable to infer that under all circumstances the people of a given district or of a county would be wholly helpless. It may fairly be implied, we think, that the power to sell, together with the express inhibition of the statute to not sell such bonds below par and but for cash, invested the commissioners' court with such incidental power and discretion as was necessary to determine the manner and methods to be adopted in order to effect a sale and just when and under what conditions it was no longer reasonably possible to meet the statute by a sale for cash at par.

If such a power under any reasonable state of facts exists, then their judgment and discretion in the premises is not the subject of control by writ of mandamus, and the order of cancellation under consideration would, in such case, be in the nature of a judgment, mere errors or mistakes in which are not reviewable, unless power to review is provided, or unless it affirmatively appeared that the power and discretion of the commissioners' court had been arbitrarily exercised. See Callaghan v. Salliway, 5 Tex. Civ. App. 239, 23 S. W. 837; Matlock, Miller & Dycus v. Smith, 96 Tex. 211, 71 S. W. 956. To illustrate, possibly with more clearness, the view we have, let it be supposed that it was shown to the commissioners' court upon the date of the order of cancellation that in fact the returns of the election theretofore held were false; i. e., that no election had in fact been held, or that the majority was the reverse of that shown in the returns. It may be said that in a case such as instanced the proper remedy would be by contest of the election, but if this be admitted, would a trial court be required by mandamus to direct a revocation of an order of cancellation, the facts being undisputed, merely because the commissioners' court had taken a short cut to the same end? We cannot think so.

It is suggested by appellees in their brief that the qualified voters of road district No. 2 could have nullified the proceedings resulting in the issuance of the bonds in question by an election duly ordered and held for that purpose. But for what reason were such voters confined to such method? No statute is pointed out that so provides. Indeed the statute having direct reference to the subject, as before indicated, gives the power to a defined class of citizens in a defined district to create an incorporated district. The purposes of the corporation are not declared. But evidently, as must be implied, the purposes relate to the general subject of the making or improvement of public roads in the incorporated district, and must be confined thereto. And, as also mentioned before, the express power given to the class of voters or to the corporation when formed are very few. The qualified voters may, in the manner provided, create the corporation. The corporation when formed may sue and be sued. In all things else relating to the powers of the corporation the law is silent. Such a corporation seems to be anomalous. But it may not be inapt to liken it to a political entity or body in the nature of a free democracy in which the qualified voters and the corporation may, in all things, within the scope of the purposes for which the body was organized, take any action or adopt any method not forbidden by law that may be deemed necessary for the general welfare. If, therefore, it be assumed that the election as originally ordered and held was in all things regular, then by the terms of the statute road district No. 2 became a corporation with power to sue and be sued, and in the absence of restriction—and there is none in the statute—had the inherent power to guard its vital interests and to appoint agents, if necessary, or certainly to instruct designated agents, to perform its will. What insuperable objection, therefore, can be assigned to the action of the controlling number of the constituent legal voters of road district No. 2 in voicing their will by petition, rather than by an election, and in selecting the commissioners' court to execute that will? We confess that we cannot advance any sufficient reason why, under the circumstances of this case, the action thus taken by the qualified voters of road district No. 2 and the commissioners' court of Johnson county in canceling the bonds in question was so denuded or deprived of all vitality and validity as to require the issuance of the writ of mandamus as herein sought. It is said in 10 Cyc. 1097:

"If the means employed are reasonably adapted to the ends for which the corporation was created, they come within its implied or incidental powers, although they may not be specifically designated by the act of incorporation. The meaning is that, except where expressly restricted by charter or statute, corporations take, by implication, the right to use all reasonable modes of executing their express powers which a natural person might adopt in the exercise of similar powers. 'They must have a choice of means adapted to ends, and are not to be confined to any one mode of operation.'"

In another part of the same authority (10 Cyc. p. 353) it is said:

"By the principles of the common law, every corporation aggregate possesses the inherent power to make all necessary rules and regulations for its government and operation, although such power may not be expressly conferred in its charter, in the statute of its creation, or in any other statute. It is regarded as a power that is included in the grant of the capacity of being a corporation. It is generally said to be 'an incident to a corporation.' "

As before noted, the statute (article 632) commits the custody of the bonds after their issuance to the control of the commissioners' court until sold, and particularly limits the power of sale to a sale for cash "at not less than their par value." We cannot think that it is within the meaning of the statutes relating to the subject that it was ever contemplated that they should retain custody and control of the bonds in negotiable form for a period without limitation awaiting a time when the bonds could be sold for par. To so construe the law is to say that after the issuance of the bonds and after an unsuccessful effort to sell them at par, the commissioners' court may retain the bonds for an indefinite number of years and then, without further notice to the people of the district or county, proceed at once to sell the bonds, regardless of whatever changes may have taken place in the district or in the condition of the people. The centers of the population may have altogether changed, or the district possibly become depopulated, or the roads in the district already sufficiently improved by the citizens under the general road laws, or the roads under the lawful orders of the commissioners' court may have been wholly discontinued. Some discretion, therefore, lies in the commissioners' court, as it seems to us, to recognize such facts and meet such conditions. As we may have already noted, no proof was offered below in behalf of appellees that if reissued the bonds would now be approved by the Attorney General, without which they would not be valid and could not be sold for par. We are not inclined to adopt the contention of appellees that we must so infer. The commissioners' court, as the legal representatives of road district No. 2 and of Johnson county, steadfastly refused to reissue the bonds, and we cannot think upon the showing made that their judgment at this late day should be disturbed. If the conditions of road district No. 2 and of the people therein are at this time such as to make it desirable for the issuance of bonds for the improvement of roads in that district, as provided in that law, it can be readily so determined by another election with proceedings as before.

We, therefore, conclude that the judgment of the district court directed to the commissioners' court of Johnson county should be set aside, and judgment here entered that appellees take nothing by their suit.