PEOPLE *ex rel.* OSBORNE *v.* COUNTY CANVASSERS OF DUTCHESS COUNTY.

(*Supreme Court, Special Term, Dutchess County.* February, 1892.)

1. CONTEMPT — PERSONAL SERVICE.
   Objection that an order on the clerk of the board of county canvassers, to show cause why he should not be punished for contempt in failing to produce certain election returns, was not personally served on the clerk, is not available, where it appears that the order was filed in the office of the clerk, and was in fact seen and read by him.

2. SAME — AFFIDAVIT.
   An affidavit, on which an order to show cause is based, alleging the venue thereof in a certain county, but certified merely by a commissioner of a certain city in that county, is defective, in failing to show that it was taken in the officer's jurisdiction; but where no objection is raised on the return of the order, and the respondent answers to the merits, the defect will be deemed waived.

3. ELECTIONS — CANVASSING BOARDS — DUTY OF CLERK.
   After the clerk of a board of county canvassers has transmitted copies of election returns to the governor, secretary of state, and comptroller, as required by an order of court, and also by Rev. St. (8th Ed.) p. 424, § 23, so that the same may be brought before the state board, his responsibility is at an end; and the fact that the returns were afterwards taken by him from the custody of such officers, but with their knowledge and approval, and so placed beyond the reach of the state board, does not render him liable for contempt, as the fault, if any, is with the officers named.

Motion to punish for contempt Storm Emans, county clerk and clerk of the county canvassers of Dutchess county, made in proceedings by Edward B. Osborne against the canvassers of said county. Denied.

*Geo. Bliss* and *Chas. F. Cossum,* for the motion. *C. B. Herrick* and *F. B. Lown,* (*Delos McCurdy,* of counsel,) opposed.

CULLEN, J. The regularity of these proceedings, taken to punish for contempt Storm Emans, county clerk and clerk of the board of canvassers, is assailed on two grounds. The first is that the order of this court was not personally served on the clerk, and this, it is claimed, is a conclusive answer to

these proceedings. I am at a loss to discover the aspect of the facts upon which this claim is based. The affidavit of Cossum states that the respondent came into the clerk's office a few minutes after the order was filed in that office, and read the order. This statement is not denied. This was a sufficient compliance with even the most technical rule as to service. The respondent read and saw the original order, and the order was left in the appropriate place for its custody.

The second objection is that the affidavits upon which the order to show cause why the respondent should not be punished for contempt was based are defective, in that venue is laid in Dutchess county, merely, and the affidavits are certified by a commissioner of deeds for Poughkeepsie. This objection is well founded, for an affidavit must show upon its face that it was taken within the jurisdiction of the officer before whom it was verified, and, if taken in any other part of the county than the city of Poughkeepsie, the affidavits would have been nullities. Had the objection been taken upon the return of the order to show cause, the proceedings should have been dismissed. But the objection was not raised, and the respondent answered to the merits; evidence being taken. I think this waived the irregularity. A proceeding by attachment is by the Code an original proceeding, but an order to show cause, in whatever form made, is merely the equivalent of a notice of motion in the action. It does not, like a warrant of attachment, subject the party to arrest without a preliminary hearing. I do not see why any stricter rule should be applied to such an application than to other motions in the action. The only present effect of this defect, if not cured, would be that such affidavits could not be considered in disposing of the questions of fact involved in the application. But it has been proved that the affidavits were taken within the jurisdiction of the commissioner, and the irregularity is cured, unless, as is now claimed, there is no authority in law for the appointment of commissioners of deeds in Poughkeepsie. I think the case of *People* v. *Salisbury*, 24 Wend. 409, is not in point. The act of 1848 (chapter 75) differs markedly in its language from the provisions of the Revised Statutes. It gives a general power of appointment to the common councils of cities, and was intended to be continuous, and of general application.

The order for the alleged violation of which it is sought to punish the respondent was made on the assent of the parties in open court. Good faith, therefore, required scrupulous compliance with its terms and spirit. This respondent, however, was not a party to the agreement, but the clerk of the board of canvassers. The proceedings against him are *quasi* criminal, and while the court should not be astute to relieve him from punishment, if the effect of its mandate has been brought to naught, still, before he is punished, he must be proved guilty of the particular offense for which he is prosecuted. The statute[1] provides that the county clerk shall deposit three certified copies of the returns in the nearest post office, addressed to the governor, secretary of state, and comptroller. It is the duty of the secretary of state "to file in his office the certified statement received by him from a county clerk, and to obtain from the governor and comptroller every such certified return received by either of them, and file the same in his office. Rev. St. pt. 1, c. 6, tit. 5, art. 3, § 23, (8th Ed.) p. 424. The whole scheme of the statute was declared by the court of appeals, in *People* v. *State Board of Canvassers*, 29 N. E. Rep. 355, intended to secure before the state canvassers the physical presence of the returns. The real duty of the clerk is to transmit; the deposit in the post office is merely the means of transmission, and any action taken by the clerk to render such means ineffectual would be both a breach of official duty and a violation of the order of the court, unless such action was taken in obedience to another valid order. That, at the time of mailing the

[1] Rev. St. (8th Ed.) p. 424, §§ 19, 20.

returns, the clerk did not know of the granting of the order of Mr. Justice INGRAHAM, is clear, both from the testimony of Mr. Sown and the affidavit of Emans himself. The effect of that order was merely to stay further proceedings upon the part of the clerk. It did not require him to take affirmative action to undo what had been done, or justify him in taking such action.

But, though the duty imposed on the clerk, both by the statute and the order of this court, was to transmit, still it is clear that at some point this duty of the clerk ceased, and that the responsibility for the returns devolved upon other officers. The person who was clerk might afterwards purloin the returns, and thereby commit an offense, but it would not be official misconduct, but personal crime; nor would it be a disobedience of the court's order. Such point occurred when the returns reached the officers to whom, by the law and the court's mandate, they were directed to be sent. It appears that all the copies of the returns were received from the post office in Albany by the messengers of the three officers named, and deposited in the public offices of those officials. Emans obtained the copy from the office of the secretary of state, in the presence of the secretary, and by his express consent. It would seem impossible to distinguish between the legal *status* of that return and that of the return of any other county then in the secretary's office. As to the return addressed to the governor, this was delivered to Emans by the messenger in the governor's office. But it appears that Emans, before going to the office, saw the governor, to whom he stated that he had forwarded the returns by mail, and had come to Albany to see what could be done about it. The governor referred him to the deputy attorney general, who was counsel for the board of state canvassers and for its individual members, and instructed him to do as that officer advised. What passed between that officer and Emans does not appear, save by the affidavit of Mr. Emans, who states he was advised to obtain possession of the returns, if he could legally do so. After this, he received the returns from the governor's office. The governor, when informed by the messenger of such delivery, approved it. This certainly constituted an implied authority from the governor to Emans for the action taken. The third return was taken from the comptroller's office, not by Emans nor in his presence, but by Judge Maynard, the deputy attorney general, who, the evidence shows, was the comptroller's counsel. The clerk in that office thinks he told the comptroller of it, but this is explicitly denied by that officer. This denial should certainly outweigh the indistinct recollection of the clerk. But, though the comptroller was not personally cognizant of it, the fact remains that the return was not taken by Emans, nor, so far as appears on the evidence, by his procurement, but by the comptroller's own counsel. Though the inclosures containing the returns had not been opened, no imposition was practiced upon any of the officers as to their contents, but the officers were entirely aware of the character of the papers delivered up. There was, therefore, in law and in fact, a complete transmission of the returns to the officers prescribed by statute. The returns were not before the board of state canvassers, not because of any defect in their transmission, nor of a disobedience of the order of the court, but because, by the action of the secretary of state, the governor, and the counsel of the comptroller, the returns were taken from the several public offices where they had been properly received, and were given to Mr. Emans. The motion to punish for contempt is therefore denied, but, as there was ground for instituting this proceeding, the denial will be without costs.