EDENS et al. v. ROAD DIST. NO. 1 OF NAVARRO COUNTY. (No. 8231.)

(Court of Civil Appeals of Texas. Dallas. April 19, 1919. Rehearing Denied May 17, 1919.)

1. HIGHWAYS ⊙—64—ROAD DISTRICTS—POWER OF BOARD—LOCATION OF PIKE ROAD—INJUNCTION.

Road district board has discretionary power to locate and construct pike roads which can be interfered with by injunction only where action sought to be enjoined is so arbitrary and devoid of merit as to be fraudulent, and the result of gross abuse of discretion implying not merely error of judgment but perversity of will, passion, prejudice, partiality, or moral delinquency.

2. HIGHWAYS ⊙—64—CONSTRUCTION OF ROAD —SUFFICIENCY OF EVIDENCE—ABUSE OF DISCRETION.

Evidence *held* insufficient to show flagrant and gross abuse of discretion and authority, or willful intention of committing wrong, by board of road district in ordering construction of certain road.

3. HIGHWAYS ⊙—113(3) — CONSTRUCTION OF ROADS—CONSTRUCTION OF STATUTE.

Navarro County Road Law 1913, § 23, as to "when * * * board shall begin its construction, or let its contract for the construction," construed, in view of sections 19, 20, 26, 30, 32, 34, and 35, to permit road district board to improve roads by contract awarded upon competitive bids or by purchasing material and employing labor and having work done under its own supervision.

4. HIGHWAYS ⊙—64—CONSTRUCTION OF ROAD —COMPLIANCE WITH LAW—EVIDENCE.

In action to enjoin construction of road ordered by road district under Navarro County Road Law 1913, evidence *held* to show that the board in ordering road and letting contract substantially complied with the law.

Appeal from District Court, Navarro County; H. B. Daviss, Judge.

Suit for injunction by J. N. Edens and others against Road District No. 1, of Navarro County and others. Judgment denying injunction, and plaintiffs appeal. Affirmed.

Callicutt & Johnson and Dexter Hamilton, all of Corsicana, for appellants.

Richard Mays, of Corsicana, for appellees.

RAINEY, C. J. Appellants brought this suit against appellee, road commissioners for road district No. 1, Navarro county, the road engineer, and McElrath & Rogers, contractors, to enjoin them from constructing a certain road in the eastern portion of the road district. The substance of plaintiffs' allegations is:

That by virtue of a special act of the Legislature approved March 27, 1913, said road district No. 1 issued bonds in the amount of $200,000 and levied a tax upon property to pay same; that "the proceeds of said bonds were being paid out by the road commissioners for said district; that the funds were not being partially, fairly, and honestly administered in the interest and for the general welfare of the road district and the taxpayers therein, but that, on the contrary, the majority dominating the board were ignoring the purposes for which the bonds were issued and the tax levied and were flagrantly diverting and threatening to divert a large portion of the same to the advantage of a few individuals to the loss and detriment of the plaintiffs and nearly all other residents and taxpayers of the district, and were colluding and conspiring with defendants McElrath & Rogers and Charles Chappell, in their unlawful acts against the plaintiffs and other taxpayers."

It was further alleged that the engineer did not make and file with the board maps, plans, and estimates showing a complete and actual survey of said road as required by law, and that such were not adopted by the board before the contract was let; that the contract with McElrath & Rogers, contractors, was let to them without competitive bids, which was contrary to law.

Defendants answered by special and general demurrer and general denial:

They denied that they had acted in reckless disregard of the rights and interest of plaintiffs and others, or designed or purposed to injure plaintiffs or others, and denied the allegations of a conspiracy to unlawfully invade the rights of plaintiffs or other taxpayers. They denied "that the suit had been filed, or is being maintained in good faith, for the benefit of other taxpayers in the district; that it was fomented and brought about by appellant Gibson for the private benefit of himself, Halbert, Goodman, Blackburn, and his financial associates, who own and have large interests in lands near Chambers, Creek bottom, along the Bazette road; and that the real purpose of the suit, while nominally brought in behalf of the general public, is for the private benefit of said persons and said interests, and is in pursuance of an effort upon their part to force appellee board to build a pike road from Corsicana along the Bazette road, to the eastern line of the district, at or near Marvin Chapel, in order that their real estate holdings may be rendered more desirable and enhanced in value. * * * That under the general as well as special law relating to public roads in Navarro county, which was specially pleaded, appellee board has complete and sole power to deal with the question of location and building of roads, and the expenditure of funds raised for road purposes. That, acting in the exercise of its power, appellee board used their best judgment and discretion in deciding to extend the Corsicana and Roane pike southward as alleged, some 3½ miles, and believe that said action was proper and for the best interest of all parties concerned. That they did not act arbitrarily, but advisedly, and with deliberation; and that the honorable district court is not authorized to overturn and set aside the action of appellee board, and substitute its judgment for

that of the board, in the absence of legal fraud on the part of the board, which cannot in fact be shown. That appellee board derives its power, not only from the special law of 1913, but also from previous special laws theretofore passed, as well as from the general road laws of the state. That in awarding the work of building the road in controversy, as well as others previously built, appellee board say that the law was literally, as well as substantially, complied with, and that their acts in the premises are legal."

The case was tried, and the court denied the injunction sought, and plaintiffs prosecute this appeal.

The first proposition submitted is:

"The court erred in denying the temporary writ of injunction because the evidence abundantly discloses flagrant and gross abuse of discretion and authority by the road board in ordering the road in controversy built."

[1] We do not concur in this proposition, but hold as contended by appellee, as stated in its counter proposition, thus:

"The power is vested in appellee board to locate and construct pike roads, and its discretionary power to do so can only be interfered with by injunction, where the proposed action sought to be enjoined, is so arbitrary and devoid of merit, as to be fraudulent; and the result of gross abuse of discretion, such as to imply. not merely error of judgment, but perversity of will, passion, prejudice, partiality, or moral delinquency."

[2] As we construe the evidence, we think it fails to show a flagrant and gross abuse of discretion and authority in ordering the road in controversy built or a willful intention of committing a wrong. Grayson Co. v. Harrell, 202 S. W. 160; Tyree v. Road Dist., 199 S. W. 644; Howe v. Rose, 35 Tex. Civ. App. 328, 80 S. W. 1019; Huggins v. Hurt, 23 Tex. Civ. App. 404, 56 S. W. 944; Jackson v. McAllister, 196 S. W. 671.

The second point raised by appellants is:

"The Navarro County Road Law is mandatory in its provisions governing contracts, and the substitution of distinctly different methods by the board, as proved in this case, is illegal."

The evidence in this case fails to show that the road commissioners failed in a substantial manner to comply with the special road law enacted for Navarro county by the Legislature in 1913 (Loc. & Sp. Acts 33d Leg. c. 95). The law authorized the board in improving the roads (1) by contract awarded upon competitive bids or (2) by purchasing material and employing labor, and having the work done under its own supervision. Section 23 of the act, 1913, reads:

"When said maps, plans, details, profiles and specifications are completed, and, having been duly considered, have been adopted by the board, the board shall begin its construction, or let its contract for the construction of that road, first upon which the resident landowners or other persons shall offer the greatest inducements in the matter of labor, rights of way, and other available help, or other inducement, toward the laying out and construction of such road, and, second, upon that road where the next greatest aid or inducements are offered, and so on, until all of said roads are completed."

This law was construed by the county judge and by one member of the board as above stated, and the trial judge construed the law that the board had the "legal right to construct roads if they saw fit to do so (1) by employing and hiring the work done, or (2) upon competitive bids, to contract for the work of the construction of the road."

[3] Section 2, Special Road Laws for Navarro County passed in 1899 (Acts 26th Leg. c. 88), makes a similar provision, so we think the construction above stated is the proper construction to be placed upon said special law.

Section 35, Special Road Laws of Navarro County, 1913, reads:

"The provisions of this act are and shall be held and construed as cumulative of all general laws of the state on the subject treated of herein, and of the special road law of Navarro county, but in case of any conflict the provisions of this act shall control."

Sections 19, 20, 26, 30, 32, and 34 of Special Law 1913, indicate that the view as to the rights of boards is as stated above.

[4] That the board complied substantially with the law is shown by the facts. The road board of Navarro county was duly organized, and on February 28, 1918, it adopted four main roads leading from Corsicana (the road in suit not being among them), the county seat, and let the contract to McElrath & Rogers. At that time they adopted a unit system. Charles Chappell, engineer for the board testified, after stating what roads were adopted, as follows:

"And I think the Angus road, were laid out, with plans, specifications, profiles, working drawings, etc., before the contract was let in February, and March, 1918. The bids were submitted and let on the basis of the Rice road, and as the basis for their bids, I submitted to them plans, specifications, profiles and estimates of material for all of the Rice road. The general specifications, together with instructions to bidders, is what was submitted to the contractors. I made those specifications, worked them out myself, and had them printed. The estimate of the Rice road is in the minutes, and that is the basis of the contract that was let. These specifications would fit any pike road in the world. I have some blueprints of bridges attached to the specifications, which would apply to any bridge that could be built. I submitted the map of the Rice road to the bidders. I submitted to the board an estimate of the cost of the extension of all the roads in the district that haven't been extended to their limits, an extension of which was contemplated. The board

furnishes all of the material and hardware that goes into the road and bridges in all cases, and the contractor does the work. The contractors bid on the bridges at so much per thousand board feet, and the bridges are built according to specifications I provide. There is a record that shows the character of advertisement made at the time bids were invited in February, 1918; there were three bidders. The contract was let on the basis of the Rice road, and the maps, profiles, plans, and specifications were submitted to the bidders to figure on. They were furnished with all the necessary information. The profiles and specifications had reference to the Rice road, and they also had a general map showing these other roads. The contract was let on the unit basis, so much per unit; so much per cubic yard of concrete or earth, which would apply to any and all roads. It didn't make any difference as to what basis you took it on; it would be fair to each and every contractor, if you let them know the basis beforehand. The unit basis is a contract that is let by units, so much a cubic yard, so much a thousand feet—that is, lineal feet, so much per cubic yard of concrete at such and such a price per unit. I mean that we have a unit for each material. The general units in this district are so much per cubic yard of excavation, so much per cubic yard of embankment, and so much per thousand feet of board measure. A foot or board measure is a board of one foot square and one inch thick. The unit of haul is a yard mile or a yard quarter. A yard mile is a yard of dirt hauled one mile. So by multiplying you could ascertain what the cost was or whether there was much or little of the haul. By the board measure you have the price fixed, depending upon the number of units used with reference to lumber. The cubic yard is the unit for concrete work. When you let a contract and advertise for bids, your specifications call for so much per unit, and a unit charge means a cubic yard as applied to concrete. There is necessary dirt movement, either to or excavation from the road, and the unit with reference to that is a cubic yard, and when we advertise for that work it is so much per cubic yard. The cost of the work depends upon the number of units involved in the enterprise. The units in buying gravel is a cubic yard. The question of the transportation of the gravel from where you get it to the place you are building does not enter the price of the gravel, but it does enter into the cost of the haul. That is included in the unit of haul which I mentioned awhile ago.

"The question of unloading and cleaning and placing gravel in shape is also figured in that, and the unit is a cubic yard. In the ordinary road construction in this district, the essential units that are generally figured on in the plans and specifications and estimates are the cubic yard for earth work, cubic yard for concrete work and lumber per thousand feet of board measure. Then there is the haul, the yard mile and yard quarter. The yard quarter is a yard of gravel hauled a quarter of a mile, instead of a mile. Those are the chief units that are figured. The element of haul and transportation is a very important one in the cost of material put in place. This is figured by the yard mile, which is figured on the unit basis also.

"At the time the advertisement for bids was made, there were plans and specifications submitted, which had been adopted, specifying the units upon which the bids were invited; and they all bid or had an opportunity to bid on the same units, and in doing this they actually used the plans and specifications of the Rice road, because they contained all of the units that would be contained in any other road constructed later on. The price at that time was based upon the units, and not upon the aggregate of the construction work. The fact that the Rice road had not been built, in fact, would make no difference in arriving at the contract price of all the work in the district. It was just as easy and definite and certain to arrive at the value of the work done on other roads since then, irrespective of whether the Rice road was built or not. The 1,500 feet of bridge that was contemplated on the Rice road was covered by the unit as applied to lumber, and the cost of that material would depend upon the number of units used in that construction. If there were no units of lumber used, there would be no cost for lumber, and the same contracts, and under the same terms the unit of concrete was figured on, and it was within the power of the board later on, if they wanted to, to adopt either unit (lumber or concrete) they wanted for bridge purposes.

"Before I could engage in state highway work, I had to have a certificate of qualification, which I did obtain from the State Highway Department. The state and counties have what is generally called standard plans and specifications for any road or any bridge, and any road or bridge that is constructed under state and federal aid is constructed according to such plans and specifications. And the same is true with reference to the building of roads, in general road districts. It is based on the unit basis. There are standard culverts, and 24-inch culverts, which is standard. If you have a bridge that is 1,500 feet long, they have 20 or 40 foot spans, and there are so many units. After the cost of the unit is agreed upon, the aggregate cost of the work depends upon the number of units used. The book which is now shown me is the Standard Specifications of the State Highway Department, and the standard specifications which I use, and which were adopted by the board, are modeled after and based upon the same principle as the state specifications. This paper which is handed me is the standard plan for bridges and culverts used by the State Highway Department. The units that were adopted by the board at the time advertisement for bids was made applied to the Love Bridge, Angus, Rice, and Roan roads, or any road the board wished to improve. At the time these bids were invited, I had data in my office on all the roads that had been surveyed at that time. Contractors could have had the benefit of all of such information, if they called for it, which they did. The map and profile of the Roan road was made in December, 1917, and before February 25, 1918. Also as to the Love Bridge road in January or February before the contract was let. Also the Rice road; and the Chatfield road, and the Angus road were all surveyed out, with maps, profiles, estimates, etc., before the contract was let to McElrath & Rogers."

Chappell further testified in regard to the road in controversy as follows:

"At the time the contract was let in March, there was not in existence any survey, estimates, profiles, plans and specifications of the road in controversy. At that time the board had never called on me to make any surveys and calculations of any kind with reference to that road. The first survey I made was in September, 1918. I know I made the survey before the board met on October 3, 1918. It was probably two weeks before the board met that I made the survey. The board's attention was called to the fact that there had been no survey, and I was ordered to make the survey, between the 18th of September and 3d of October. I made a profile and map of that road during the same time. On October 3d, I submitted to the board estimates and details showing the amount of excavation on each mile of said road. The grade of the road is shown in the estimate, not on the profile. I also submitted on October 3d to the board an estimation of the nature and amount of material and the cost per unit of the material to be used on each mile of the road in its construction.

"After I surveyed the road in controversy, I filed the result of my work and my estimates, plans, etc., with the road board, on October 3d. It is a fact that the cost and character of the work that they were going to do was discussed by the board before they finally resolved to build the road in controversy. The question of using concrete for culverts, rather than lumber, was discussed. Milligan took the position that you couldn't lawfully build any bridge or culvert unless it was concreted. I estimated the cost of the road in controversy a little over $11,000. They could, by the use of the units, make it cost more or less, as they wanted to. The result of my work was laid before the board as above stated, and it was pertaining to that work that the discussion took place before the road was adopted and ordered built. The map and profile of the road in controversy was made by me, between September 18 and October 3, 1918, together with blueprints."

Chappell's evidence is corroborated, and we find it to be facts of the case.

The bond of McElrath & Rogers was made, but not filed with the board until about a week after this suit was filed. Some other minor discrepancies were committed by the board; but the evidence shows none deleterious to the proper building of the road, and we hold that the refusal of the court to grant an injunction was proper.

The judgment is affirmed.