## International Shoe Company v. Duttenhofer et al.

*Illoway & Fisher*, for petitioner; *Louis E. Levinthal*, contra.

HEILIGMAN, J., May 31, 1934.—This case comes before the court on a petition to show cause why an attachment for contempt should not be issued against the defendants, Harry Reichman and Penrose Reichman, for their failure to carry out the order of this court to pay a sum of money. The matter arises out of a proceeding in equity under the Bulk Sales Act of May 23, 1919, P. L. 262. In that proceeding, we held that the defendants above named had failed to comply with the provisions of the Bulk Sales Act, supra, and therefore declared a sale of certain merchandise to these defendants was fraudulent and void as to creditors of the vendor, and the defendants were liable as receivers for the fair value of the merchandise purchased, as provided in the act. After hearings for the purpose of having the creditors of the vendor prove their claims and to determine the amount due to such creditors by these defendants, we determined that the defendants, Harry Reichman and Penrose Reichman, were indebted to the creditors of the vendor in the sum of $3,146.20, and a decree was then made directing the defendants to distribute this fund among those creditors who had proved their claims, the distribution to be made within 10 days from the date of the decree. This order was not complied with by the defendants, and the present petitioner, one of the creditors, filed this petition for the issuance of an attachment.

The Bulk Sales Act provides, inter alia, in section 3, that if a purchaser of such chattels as are included in the act does not comply with the terms thereof . . . "then such sale or transfer shall be fraudulent and void, and such pur-

chaser . . . shall, at the suit of any creditor, be held liable to the creditors of the said vendor as a receiver for the fair value of all the property so bought . . . by him".

This petitioner earnestly contends that, under the terms of the act, the defendants are liable to the creditors of the vendor "as receivers" and therefore, by analogy, as trustees; if they are liable as trustees, they are bound to account for and pay over the fair value of the goods to the creditors and failure to do so on the order of the court constitutes a contempt which the court will punish by attachment.

The question involved has not been passed upon in this jurisdiction, and the many cases cited by this creditor in its brief are not in point when applied strictly to the instant case. It is sufficient to note that in each of the cases cited the court found actual fraud, and an attachment issued on that ground, in addition to the fact that the cases cited deal with common-law fraud and were not concerned with the interpretation of fraud under a statute as in this case.

The language of the court in the recent case of Gitt v. Hoke et al., 301 Pa. 31, where the interpretation of this same act was before the court, well applies to the instant case. The court stated: "The act, being in derogation of the common law right to purchase and sell property and also being highly penal, must be strictly construed and cannot be extended beyond its plain language." The question involved in that case was whether the Bulk Sales Act applied to the sale of the entire business and fixtures of a manufacturing concern. The court, in holding that the act did not apply, further stated: "Had that been the legislative intent it should have been expressed in plain words." In like manner, we are of the opinion that, had the legislature intended to hold a purchaser of goods under this act as a trustee ex maleficio, it could well have employed apt words to carry out this intent. Such a procedure is not without precedent. In the Insolvency Act of June 4, 1901, P. L. 404, sec. 13, it is provided: "The court may, by rule to show cause, followed by attachments for contempt, compel the insolvent to comply with its orders. . . ." It may be added further that had the legislature deemed the mere act of purchasing goods without complying with the provisions of the statute of sufficient gravity to warrant imprisonment, it could well have so provided as it did in section 4 of the act, in branding as a misdemeanor the wilful giving of a false statement by a vendor of the list of his creditors or the amount due to such creditors.

As to the provision in the act that a non-complying purchaser is liable to the vendor's creditors "as a receiver", we are of the opinion that the use of the word "receiver" alone should not render such a purchaser liable as a trustee ex maleficio or as one who is guilty of actual or constructive fraud. The use of the word "receiver" in the act may well have been intended only as a descriptive word for the purpose of indicating that such purchaser was liable to and should distribute the fair value of the goods to the creditors "as a receiver", as opposed to the thought that such purchaser was a trustee who in bad faith had committed a fraud and a breach of trust. We are further of the opinion that to enforce such payment or distribution by attachment might well give to this act a viciousness which would work severe hardship in many cases where there is no evidence of lack of good faith or a question of actual fraud involved. In George H. West Shoe Co. et al. v. Lemish et al., 279 Pa. 414, the court held a sale fraudulent and void under the act because the affidavit obtained was not in conformance with the provisions of the act. It is possible to conceive that a purchaser may in all good faith believe that he has complied with the statute, sell the goods purchased, and, having used the proceeds, discover 90 days later

that he is obliged to pay his vendor's creditors a sum greatly in excess of his own valuation of the goods so purchased. If he is without funds, he is faced with imprisonment as for contempt of court. This is necessarily so, if we adopt the contention of this petitioner, for such purchaser would by his act become a trustee, and the fact that he is without funds to comply with the order of court is not a defense: Messmore's Estate, 293 Pa. 63. In that case, the court held that where a petition is filed against a trustee for an attachment for contempt, he cannot allege his poverty as an excuse of his duty to pay over the trust funds, where his inability to pay was due to his own wrongful act.

The Bulk Sales Act of the State of New York contains provisions similar to the statute in this State. In the case of Cowen v. Gruber et al., 176 App. Div. 905, 162 N. Y. Supp. 1053, the court had before it a petition similar to the one in the instant case, where a sale had been declared fraudulent and void as to creditors of a vendor, and the purchaser was ordered by the court to pay to the creditors the value of the merchandise so purchased. The opinion of the trial court in that case stated:

"The judgment upon this trial 'ordered, adjudged, and decreed . . . that the defendant is a receiver for the benefit of the plaintiff, as trustee for creditors of Salzman and Levy, of the said stock of merchandise that came into his possession by virtue of the said sale and transfer; that the defendant, Samuel L. Gruber do forthwith convey, pay, and deliver and account for to the plaintiff of the property received by him, as aforesaid, or its value, in the sum of $2,500.' . . .

"We are thus brought to a consideration of the real question on this motion, which is whether section 44 of the Personal Property Law is sufficient to bring this defendant within the category of a receiver appointed by this court, and over whom this court has summary jurisdiction and may punish for contempt for failure to pay over moneys intrusted to such receiver. The language applicable to section 44 of the Personal Property Law is as follows: 'Any purchaser, transferee or assignee who shall not conform to the provisions of this section shall upon application of . . . the creditors of the seller, transferer or assignor become a receiver and be held accountable to such creditors for all the goods, wares, merchandise and fixtures that have come into his possession by virtue of such sale, transfer or assignment. . . .' Does this language used by the Legislature bring this defendant within subdivision 1 or 8 of section 753 of the Judiciary Law, which provides what contempts may be punishable civilly? In short, is this defendant in the same category as the usual receiver appointed upon the selection of the court, and therefore held amenable to the summary process of the court? This question does not seem to have been, as yet, adjudicated. When the Legislature employed the word "receiver" in section 44 of the "Personal Property Law," did it mean to emphasize that this defendant should be held accountable for the value of the goods received by him, or did it mean to give him all the attributes of a receiver appointed upon the selection of the court? If it is held that the mere use of the word "receiver" would make this defendant liable to be punished as for a contempt of court, then it follows that he has all the other rights and obligations pertaining to a receiver appointed upon the selection of the court. . . .

"One of the reasons which countenances the summary jurisdiction over a receiver appointed upon the selection of the court is that the court has the power of selection. Under this statute, however, the court has no power of selection, and the person himself who is a participant in this constructive fraud must be made the receiver. To say that this defendant was appointed as receiver by the court in the sense that the ordinary receiver is appointed confuses terms.

It must be presumed that the judgment of the court followed the statute, and that the receiver was appointed because of the statute, and not upon the selection of the court. When there is no choice there is, in the ordinary acceptance of the term, no selection. An indication of how closely the court construes the phrase 'an officer of the court' is seen in General Electric Co. v. Sire, 88 App. Div. 498, 85 N. Y. Supp. 141, in which the court held that a receiver, appointed by the court for the property of a corporation, was not an officer of the court in acquiring property in his capacity of the holder of the legal title. If it is held that section 44 of the Personal Property Law allows a purchaser in bulk to be liable as for a contempt, then the result is that a large class of cases is created in which the creditor may enforce the collection of his debt or a part of it by imprisonment. Without passing upon the right of the Legislature to bring about such a result in the manner attempted, yet it would seem that if such was the intention, such intention should have been more clearly expressed in the statute than by the mere use of the word 'receiver' as used in the manner in which it is used in the statute. . . . In any event, however, to hold that the mere use of the word 'receiver' as used in this statute would cause this class of defendants to be brought into the same category as a receiver appointed as the arm of the court and upon its absolute selection is not warranted until the legislative intent shall be more clearly expressed. The motion is denied."

We are finally brought to the conclusion that the use of the term "receiver" in our own statute does not place upon these defendants the fiduciary capacity incident to a trustee which would enable us to issue an attachment to enforce obedience to the decree of the court; nor do we believe that the intent of the legislature was to produce this result. It is also to be noted that the chancellor in his findings of fact and conclusions of law did not find that these defendants were guilty of actual fraud or that their acts constituted them trustees ex maleficio, such as would justify the court in issuing an attachment as for a contempt and thus punish them for a breach of trust, as was the case in Allen et al. v. Pennypacker et al., 302 Pa. 495, cited by the petitioner. The sole question here is whether a purchase of goods in bulk, without complying with the provisions of the statute declaring such purchase to be fraudulent and void, constitutes such purchaser a receiver analogous to a trustee ex maleficio. We are clearly of the opinion that it does not. The case of Allen et al. v. Pennypacker, supra, held that a trustee ex maleficio is not within the exceptions provided in the Act of July 12, 1842, P. L. 339, and an attachment issued, but the opinion of the court specifically notes that in a former appeal in the same case the defendant had been adjudged a trustee ex maleficio and guilty of actual fraud.

Under the foregoing, we are of the opinion that the decree of this court was a mere order for the payment of money; that the violation of the provisions of the Bulk Sales Act by these defendants does not constitute them such trustees as are liable to attachment for a breach of trust and thus within the exceptions contained in the Act of 1842, supra, which would empower this court to issue an attachment as for a contempt of court. Rule discharged.