Penn Anthracite Mining Co. *v.* Anthracite Miners
of Pa. et al. Appellants.

Argued March 7, 1934.

Before TREXLER, P. J., KELLER, CUNNINGHAM, BALDRIGE, STADTFELD, PARKER and JAMES, JJ.

E. C. Marianelli, and with him Francis B. Biddle, Samuel H. Torchia, James M. Stack and Robert E. Dolphin, for appellants.—The act of the Legislature is presumed to be constitutional and courts will not set it aside, unless the breaches of the fundamental law are so glaring that there is no escape: Miller v. Belmont, 268 Pa. 51; Minsinger v. Raw, 236 Pa. 327.

The Act of June 23, 1931, P. L. 925 is a constitutional enactment changing and regulating the exercise of the chancery powers by the courts of common pleas: Com. v. Sheasley, 102 Pa. Superior Ct. 383; Com. v. Dietz, 285 Pa. 520.

*Wm. A. Skinner,* and with him *John P. Kelly* and *J. Hayden Oliver,* for appellees.—Courts of constitutional origin have inherent power, independent of statute, to punish for contempt: Walton Lunch Co. v. Kearney et al., 236 Mass. 310; Butler v. P. H. B. & N. C. Ry. Co., 298 Pa. 350; Bessette v. Conkey Co., 194 U. S. 324.

The Legislature has no power to take away, abridge, impair, limit or regulate the power of courts of record to punish for contempts: State v. Shepherd, 177 Miss. 205; Watson v. Williams, 36 Miss. 331; Ex parte Mc-Cown, 139 N. C. 95; State v. Doty, 32 N. J. Law 403.

Opinion by Stadtfeld, J., July 13, 1934:

The sole question presented in the case is whether the provision of the Act of June 23, 1931, P. L. 925, entitling a person, charged with indirect criminal contempt for violation of a restraining order or injunction issued by a court or judge, to a jury trial, upon demand is constitutional.

The Act of June 23, 1931, is entitled: "An Act defining the rights of persons accused of contempt of court arising out of violation of injunctions; limiting eligibility of judges in such cases; and prescribing procedure and penalties.

"Section 1. Be it enacted, etc., That in all cases where a person shall be charged with indirect criminal contempt for violation of a restraining order or injunction issued by a court or judge or judges thereof, the accused shall enjoy—(a) The rights as to admission to bail that are accorded to persons accused of crime; (b) The right to be notified of the accusation and a reasonable time to make a defense, provided the alleged contempt is not committed in the immediate view or presence of the court; (c) Upon demand, the right to a speedy and public trial by an impartial jury of the judicial district wherein the contempt shall have

been committed, provided that this requirement shall not be construed to apply to contempts committed in the presence of the court or so near thereto as to interfere directly with the administration of justice, or to apply to the misbehavior, misconduct, or disobedience of any officer of the court in respect to the writs, orders, or process of the court; and (d) The right to file with the court a demand for the retirement of the judge sitting in the proceeding, if the contempt arises from an attack upon the character or conduct of such judge, and if the attack occurred otherwise than in open court. Upon the filing of any such demand, the judge shall thereupon proceed no further but another judge shall be designated by the presiding judge of said court. The demand shall be filed prior to the hearing in the contempt proceeding.

"Section 2. Punishment for a contempt specified in section one may be by fine not exceeding one hundred dollars, or by imprisonment not exceeding fifteen days in the jail of the county where the court is sitting, or both, in the discretion of the court. Where a person is committed to jail for the nonpayment of such a fine, he must be discharged at the expiration of fifteen days, but where he is also committed for a definite time, the fifteen days must be computed from the expiration of the definite time. Approved—The 23rd day of June, A. D. 1931."

Anthracite Miners of Pennsylvania, an unincorporated association, together with certain persons named as officers, agents or representatives of said union, were proceeded against by bill in equity, in the Court of Common Pleas of Lackawanna County, in which an injunction was awarded on January 24, 1931, restraining interference with plaintiff's mining operations by menaces, threats and acts of violence. It was agreed by stipulation that the permanent injunction had been published in the morning and evening news-

papers in the city of Scranton and circulated generally in Lackawanna County, and also posted in conspicuous places at and near the main properties of the plaintiff company.

On January 31, 1934, proceedings in contempt were instituted in said court charging appellants and others, who were not named as defendants in the bill, with sundry violations of the injunction by preventing and attempting to prevent the employees of plaintiff petitioning company from going to work, and committing assaults upon the employees and officers of plaintiff company, and threatening said employees with bodily harm, and that appellants, with many others, gathered about the entrance to the colliery of plaintiff company for the purpose of picketing and preventing the employees of plaintiff company from going to and from their work, so as to prevent them from carrying on their occupation; that by their acts defendants have contemptuously defied the order of the court and the acts of peace officials attempting to preserve order. On this petition, a rule was granted to show cause why appellants should not be adjudged in contempt of court. An answer was filed to the petition, denying the various acts alleged to have been committed in violation of the injunction, and denying that they contemptuously violated the injunction order of the court and demanding admission to bail, and a reasonable time to make a defense to the accusations in the petition, and further demanding a jury trial within the judicial district where the indirect contempt charge is alleged to have been committed, pursuant to what they claimed as their rights under the Act of June 23, 1931, P. L. 925, quoted supra. After hearing of testimony on behalf of petitioning company, no evidence being presented on behalf of defendants, the court, in an opinion by NEWCOMB, P. J., declared the act unconstitutional, adjudged appellants guilty of contempt and

imposed on each a fine of $50, and in default of payment, to stand committed until paid.

It was formally agreed of record that the acts charged in the petition occurred in the Borough of Archbald, distant approximately ten miles from the county seat of the court, and that the acts therein stated, if true, constitute an indirect contempt of court.

From the judgment and the order imposing said fine, these appeals were taken.

It is important, before discussing any other question, to determine what is meant and understood by the terms "indirect criminal contempt" specified in Section 1 of the Act.

A "direct contempt," as defined in 13 C. J. 5, (2) "is an open insult committed in the presence of the court to the person of the presiding judge, or a resistance or defiance in his presence to its powers or authority, or improper conduct so near to the court as to interrupt its proceedings.

"(4). A criminal contempt is conduct that is directed against the dignity and authority of the court, and may occur in either criminal or civil actions and special proceedings.

"(7). Criminal contempts, being offenses directed against the dignity and the authority of the court, are offenses against organized society, which, although they may arise in the course of private litigation, are not a part thereof, but raise an issue between the public and the accused, and are, therefore, criminal and punitive in their nature."

An "indirect" criminal contempt is therefore a criminal contempt, as defined above, committed not in the presence of court or so near as to interrupt its proceedings.

The same distinction is recognized in 6 R. C. L. 490: "Proceedings for contempt are of two classes—those

prosecuted to preserve the power and vindicate the dignity of the courts and to punish for disobedience of their orders, and those instituted to preserve and enforce the rights of private parties to suits, and to compel obedience to orders and decrees made for enforcing the rights and administering the remedies to which the court has found them to be entitled. The former are criminal and punitive in their nature, and the government, the courts, and the people are interested in their prosecution. The latter are civil, remedial and coercive in their nature, and the parties chiefly in interest as to their conduct and prosecution are the individuals whose private rights and remedies they were instituted to enforce."

In Gompers v. Bucks Stove & Range Co., 221 U. S. 418 (1911) a leading case on contempts in this country, the court, in an opinion by Mr. Justice LAMAR, points out, page 441: "Contempts are neither wholly civil, nor altogether criminal ...... It is not the fact of punishment but rather its character and purpose that often serve to distinguish between the two classes of cases. If it is for civil contempt the punishment is remedial, and for the benefit of the complainant. But if it is for criminal contempt the sentence is punitive, to vindicate the authority of the court. ...... As to civil contempts, the court says: "The decree in such cases is that the defendant stands committed unless and until he performs the affirmative act required by the court's order." The court cites as examples of civil contempt refusal to pay alimony, to make a conveyance, and to surrender property. The court concludes, page 442: "On the other hand, if the defendant does that which he has been commanded not to do, the disobedience is a thing accomplished. Imprisonment cannot undo or remedy what has been done nor afford any compensation for the pecuniary injury caused by the disobedience. ...... Such im-

prisonment operates, not as a remedy coercive in its nature, but solely as punishment for the completed act of disobedience.''

The same view is expressed by our own court in Patterson v. Wyoming Valley District Council, 31 Pa. Superior Ct. 112.

As said by this court by our late Brother ORLADY in Greason v. Cumberland Ry. Co., 54 Pa. Superior Ct. 595, 598: ''It has been universally recognized that the power to punish for contempt is inherent in the courts; its existence is essential to the preservation of order in judicial proceedings, and to the enforcement of judgments, orders, and writs of the court, and consequently, to the due administration of justice. It is a power inherent in all courts of record, and coexisting with them by the wise provisions of the common law: 7 Cyc., p. 30.''

In the exercise of this power a distinction has been recognized as between courts of constitutional origin and those of legislative origin. Courts of constitutional origin have inherent power, independent of statute, to punish for contempt. It is a common law power necessary for the enforcement of its judgment and orders, for self protection and as an essential auxiliary to the administration of the law.

The equity jurisdiction and powers of our common pleas courts are limited under the Constitution of Pennsylvania. Section 20 of Article V thereof deals with the chancery powers of courts of common pleas in the following language: ''The several courts of common pleas, besides the powers herein conferred, shall have and exercise within their respective districts, *subject to such changes as may be made by law,* such chancery powers as are now vested by law in the several courts of common pleas of this Commonwealth or as may hereafter be conferred upon them by law.'' (Italics supplied.)

The courts of common pleas in this State, under the Constitution of 1790, were not granted any chancery powers. During the early history of our Commonwealth, they applied equitable principles in common law actions. The Act of June 16, 1836, P. L. 784 first conferred very limited equity powers upon the courts of common pleas, but granted greater chancery powers to the Supreme Court, district and common pleas courts of Philadelphia city and county.

Later the Act of 1857, P. L. 39, extended to the courts of common pleas all over the State the chancery powers theretofore enjoyed by the courts of common pleas of Philadelphia city and county. The present Constitution of 1874, through Section 20, supra, granted courts of common pleas "such chancery powers as are now vested by law in the several courts of common pleas of this Commonwealth, or as may hereafter be conferred upon them by law." The judicial background of equity courts of Pennsylvania is therefore different from those of other States.

Our Supreme Court, in the case of Wilson v. Blaine, 262 Pa. 367, 105 A. 555, speaking through Mr. Justice SIMPSON, stated further judicial background with reference to the courts of equity in this State. He says, p. 371: "In this State, courts of equity did not exist until 1836, and it has been steadily held that they have no jurisdiction save that given by statute. Davis v. Gerhard, 5 Wharton 466; Hogsett v. Thompson, 258 Pa. 85. No other conclusion is possible under Art. V, Section 6 of the Constitution of 1874. He who asserts the jurisdiction must therefore point to the statute giving it."

In the above case of Davis v. Gerhard which was decided in 1840, the court said, p. 469: "By several acts of assembly enacted in 1836, certain chancery powers are vested in the Supreme Court, and other common laws courts of this State. No one of those

laws, however, nor all of them, gave to this or any other of these courts the general powers of a Court of Chancery. ...... The Constitution of this State (Previous Constitution) after specifying certain chancery powers says: 'And the Legislature shall vest in said courts such other powers as shall be found necessary; and may from time to time enlarge or diminish those powers, or vest them in such other courts as they shall judge proper for the due administration of justice.' "

This court in the case of Commonwealth v. Sheasley, 102 Pa. Superior Ct. 384 (p. 388), 157 A. 56, observed upon this very subject: "The right to punish for contempt is inherent in all courts. Snyder's Case, 301 Pa. 276; Exparte Terry, 128 U. S. 289. *But the manner of its exercise in this State is regulated by the Act of June 16, 1836, P. L. 793.*" (Italics supplied.)

The said Act of 1836 restricts the issuing of attachments and summary punishments of contempts of court to certain specified cases therein mentioned, and also provides that the punishment of imprisonment for contempt shall extend only to such contempts as shall be committed in open court and that all other contempts shall be punished by fine only.

In Snyder's Case, supra, the court said, p. 286, referring to the limitations in the Act of 1836, that an act punishable by summary proceedings "must be done in the actual or constructive presence of the court, otherwise it becomes a *misdemeanor subject to indictment as such.*" (Italics supplied.)

The power of the court to punish for contempt is expressly recognized in the original statute of 1836, as also in the statute of 1931, now under consideration, but the exercise of said power is regulated by both statutes.

Every legislative enactment will be presumed to be constitutional after passage, and will be upheld by the

courts unless those asserting the unconstitutionality of the legislative enactment clearly point out that it violates the fundamental law of the land.

In the case of Miller v. Belmont, 268 Pa. 51 (p. 62), 110 A. 802, our Supreme Court, in an opinion by Mr. Justice Moschzisker, said: "We have no power to set aside any part of a statute, be it a practice act or one dealing purely with substantive law, unless the conclusion that it is either unworkable or unconstitutional is inevitable (citing Minsinger v. Raw, 236 Pa. 327, 331) and the necessity for so declaring inescapable (citing Mesta Machine Co. v. Dunbar Furnace Co., 250 Pa. 472, 476)." The same justice said in Commonwealth v. Hyneman, 242 Pa. 244, 264 (88 A. 1015): "It is the duty of every judge, without regard to his opinion as to the necessity for or the wisdom of the act of assembly before him, to search for a construction which will support the legislative interpretation of the Constitution, and an act can never properly be declared void unless this is found to be impossible."

The chancery powers exercised by the courts of common pleas are by the Constitution itself expressly held and exercised "subject to such changes as may be made by law," and this clearly means such changes as may be made by the legislature from time to time: Section 20 of Article V, supra, confers upon the legislature the power and authority to make changes in the exercise of chancery powers by said courts. There is therefore clear constitutional authority for the legislature to act upon such matters. It is obvious that if the provisions of the Act of 1931 had been passed prior to the Constitution of 1874, the courts of common pleas would have been bound thereby, because it would have dealt with chancery powers then "vested by law in the several courts of common pleas of this Commonwealth." Under this constitutional

provision,. the future, as well as past, legislative acts changing or regulating the chancery powers, have the express constitutional sanction of Section 20, supra.

Under the pleadings it is admitted that the acts charged against appellants were not committed in the presence of. the court or so near thereto as to obstruct the administration of justice. It is admitted that they were committed at least ten miles away from the court room. The allegations of the petition for the rule, show that the acts set forth therein constitute a criminal offense; the acts show assault and battery, the crime of riot and inciting to riot, and aiding and abetting in the commission of a crime or crimes. In addition, the evidence on behalf of petitioner show acts which are criminal under the laws of Pennsylvania. In the case at bar, the proceedings were instituted by a private party for the purpose of vindicating the dignity and power of the court. The court below found that appellants had committed "contemptuous violation of an order of this court," and imposed a fine to stand committed until the order be complied with. The proceedings instituted on January 31, 1934 were independent proceedings, even though they grew out of the original action. Gompers v. Bucks Stove & Range Co., supra; Michaelson v. U. S., 266 U. S. 42. The allegations and the evidence in support thereof show an indirect criminal contempt which entitled appellants to the benefit of the Act of 1931.

In our opinion the act does not deprive the court of the power to punish for indirect criminal contempt. It simply provides for a method of ascertaining, through a trial by jury, whether or not there has been a violation of the injunction, and whether the person or persons cited for contempt were guilty of such violation. It provides (a) the right to admission to bail, as in criminal cases, (b) notification of the charge and a reasonable time to prepare a defense, (c) trial

by jury upon demand, and (d) for a change of trial judge. The latter clause is not involved in this appeal, and we do not pass upon it.

We have been very much aided by the able arguments at bar on behalf of each side, as well as by the elaborate and comprehensive briefs submitted. Recognizing the importance of the question involved, we have given most careful consideration to the question raised. We feel that there is no occasion for alarm by the change made by the Act of Assembly. For any overt act which may be committed we still have our criminal jurisdiction to which all offenders must answer. We feel that there is nothing in the Act of Assembly which violates the fundamental law and that therefore the demand for a jury trial should have been granted.

Almost the identical question was raised in the case of Michaelson v. U. S., supra, involving the constitutionality of the Clayton Act, 38 Stat. 934 (1914) which provides for trial by jury for indirect criminal contempts where the contempt also constitutes a criminal offense under any Statute of the United States or under the laws of the State in which the alleged contempt was committed. The constitutionality of this act finally reached the Supreme Court of the United States, which in 1924 declared the same to be constitutional, in a very clear and comprehensive opinion by Mr. Justice SUTHERLAND. The language there used is so pertinent to the present inquiry that we quote therefrom as follows, p. 65: "But it is contended that the statute materially interferes with the inherent power of the courts and is therefore invalid. That the power to punish for contempts is inherent in all courts, has been many times decided and may be regarded as settled law. It is essential to the administration of justice; ...... but the attributes which inhere in that power and are inseparable from it can

neither be abrogated nor rendered practically inoperative. That it may be regulated within limits not precisely defined may not be doubted. The statute now under review is of the latter character. It is of narrow scope, dealing with the single class where the act or thing constituting the contempt is also a crime in the ordinary sense. It does not interfere with the power to deal summarily with contempts committed in the presence of the court or so near thereto as to obstruct the administration of justice, and is in express terms carefully limited to the cases of contempt specifically defined. Neither do we think it purports to reach cases of failure or refusal to comply affirmatively with a decree—that is to do something which a decree commands—which may be enforced by coercive means or remedied by purely compensatory relief. If the reach of the statute had extended to the cases which are excluded a different and more serious question would arise. But the simple question presented is, whether Congress may require a trial by jury upon the demand of the accused in an independent proceeding at law for a criminal contempt which is also a crime. ...... The proceeding is not between the parties to the original suit but between the public and the defendant. The only substantial difference between such a proceeding as we have here, and a criminal prosecution by indictment or information is that in the latter the act complained of is the violation of a law in the former the violation of a decree. In the case of the latter, the accused has a constitutional right of trial by jury; while in the former he has not. The statutory extension of this constitutional right to a class of contempts which are properly described as 'criminal offences' does not, in our opinion, invade the powers of the courts as intended by the Constitution or violate that instrument in any other way.''

An attempt has been made to distinguish that case

from the instant case in that the former arose in one of the inferior federal courts, which are statutory in origin and therefore subject to regulation by Congress. This however becomes immaterial in view of what we have discussed supra, that the exercise of equity powers by our common pleas courts was under the Constitution specifically made "subject to such changes as may be made by law."

The lower court, in its opinion, cites and discusses numerous cases from other jurisdictions in which similar legislation has been declared unconstitutional. It would unduly lengthen this opinion by attempting to analyze and distinguish these cases as each must necessarily be governed by the constitutional provision of the respective State. In view of the constitutional limitation in our own State, and the limited equity powers of our courts, as discussed supra, these cases from other jurisdictions are not applicable or controlling.

The judgment of the lower court is therefore reversed and the record remitted for further proceedings not inconsistent with this opinion.