## Freihofer Bakery Company v. Friel

*Herbert-L. Hutchinson, William C. Ferguson, Jr.,* and *J. Borton Weeks,* for plaintiff.

*John E. McDonough,* for defendant.

MacDade, J., September 21, 1934.—On May 7, 1934, our colleague in this court, Hon. John M. Broomall, 3d, granted the plaintiff a temporary injunction restraining the defendant, Matthew Friel, from competing with the plaintiff in the sale of bread and other bakery products on their route no. 924, being more particularly described in the bill in equity filed herein by the plaintiff against the defendant, to restrain him as a former employe under contract from such competition, allegedly in violation of the covenants in the said contract prohibiting the sale of bread and bakery products, as follows: Territory in Prospect Park, Delaware County, bounded on the north by Amosland Road, on the south by Madison Street, on the east by Chester Pike, and on the west by Baltimore & Ohio Railroad.

The said contract was in writing and dated September 23, 1932. The defendant left the plaintiff's employ on April 29, 1934.

Since the granting of the preliminary injunction, the issue has come to a final hearing, and the chancellor is awaiting requests for findings of fact and conclusions of law and briefs from the respective parties.

From the record, it would appear that the writ of preliminary injunction was served personally upon the defendant and that he had personal notice of the continuance thereof by proper application for same under the Equity Rules, for in open court, in his presence and that of his counsel, we made the decree continuing the temporary injunction of May 7, 1934, until further order of the court.

Plaintiff, being of the opinion that the defendant was wilfully disobeying the mandate of the writ, presented a petition to the court to declare the defendant in contempt therefor. A hearing was had, the defendant declining to appear, and we determined thereat in his absence, but his counsel appearing to defend and to cross-examine, from the facts proved in support of the averments that this defendant was guilty of an indirect contempt under the provisions of the Act of June 23, 1931, P. L. 925, for which he should be punished by imposing a fine or imprisonment or both, as we would elect.

Being guilty of contempt (indirect), there never has been any question of the power of the court to punish such, although the punishment may be regulated by statute. This was done by the Act of 1931, supra, which defines the

rights of persons accused of contempt of court arising out of violation of injunctions, limiting eligibility of judges and prescribing procedure and penalties.

The act provides:

"That in all cases where a person shall be charged with indirect criminal contempt for violation of a restraining order or injunction issued by a court or judge or judges thereof, the accused shall enjoy—

"(a) The rights as to admission to bail that are accorded to persons accused of crime;

"(b) The right to be notified of the accusation and a reasonable time to make a defense, provided the alleged contempt is not committed in the immediate view or presence of the court;

"(c) Upon demand, the right to a speedy and public trial by an impartial jury of the judicial district wherein the contempt shall have been committed, provided that this requirement shall not be construed to apply to contempts committed in the presence of the court or so near thereto as to interfere directly with the administration of justice, or to apply to the misbehavior, misconduct, or disobedience of any officer of the court in respect to the writs, orders, or process of the court; and

"(d) The right to file with the court a demand for the retirement of the judge sitting in the proceeding, if the contempt arises from an attack upon the character or conduct of such judge, and if the attack occurred otherwise than in open court. Upon the filing of any such demand, the judge shall thereupon proceed no further but another judge shall be designated by the presiding judge of said court. The demand shall be filed prior to the hearing in the contempt proceeding."

The provisions of the said act have been strictly complied with and, the defendant failing to demand a jury trial ("to a speedy and public trial by an impartial jury"), we proceeded to sentence him when brought before us on September 7, 1934, upon attachment upon his body. We imposed a sentence of $25 fine and costs and 5 days' imprisonment in the county jail as punishment for the said contempt.

The purpose of the act is to provide for a jury trial for persons (as this defendant was) charged with contempt of alleged violations of an injunction or restraining order. The constitutionality of the Criminal Contempt Act has been questioned but it is now determined by a recent Superior Court decision (by Stadtfeld, J.) that it is constitutional, and the reasoning of the judge seems to be sustained by rulings of the United States Supreme Court. See Penn Anthracite Mining Co. v. Anthracite Miners of Pa. et al., 114 Pa. Superior Ct. 7.

This opinion is written to clarify the record and to show that the punishment of the defendant, who has been ill-advised, was justified. If he fails to pay the fine imposed at the expiration of the jail sentence of 5 days, there is no alternative but a further incarceration in the county jail of 15 days from the expiration of the definite term of 5 days.

The act says: "Punishment for a contempt specified in section one may be by fine not exceeding one hundred dollars, or by imprisonment not exceeding fifteen days in the jail of the county where the court is sitting, or both, in the discretion of the court. Where a person is committed to jail for the nonpayment of such a fine, he must be discharged at the expiration of fifteen days, but where he is also committed for a definite time, the fifteen days must be computed from the expiration of the definite time."

We are sorry for this misguided man whose family is sorely in need of his services and support, but the dignity of the law and the sanctity of our processes must be maintained at all hazards or else the pillars of government shall fall and crumble into the dust of antiquity.