East Caln Township *v.* Carter, Appellant.

Argued January 22, 1970. Before BELL, C. J., JONES, COHEN, EAGEN, O'BRIEN, ROBERTS and POMEROY, JJ.

*Arthur F. Earley,* for appellant.

*Glenvar E. Harman,* for appellee.

OPINION BY MR. CHIEF JUSTICE BELL, October 9, 1970:

In January and February of 1966, appellant Clayton Carter, Jr., and his wife purchased two adjacent tracts of land situated partially in Uwchlan Township and partially in East Caln Township. Parts of these tracts had been maintained as a trailer park by one of appellant's predecessors in title. Upon taking possession of the land, appellant began to improve it, intending to expand and develop this mobile home or trailer camp.

Attempts to persuade appellant to comply with zoning and other ordinances failed. In June 1966, East Caln Township, together with several individual plaintiffs, filed a bill in Equity which alleged that the appellant and his wife were establishing and maintaining a mobile home or trailer park in violation of the Zoning Ordinance of East Caln Township. Several hearings and preliminary injunctions followed. At one time, Carter was fined $500 for contempt of Court for moving additional trailers onto the land in violation of a preliminary injunction. After additional hearings, findings of fact and conclusions of law were made and a

Decree nisi was entered on April 8, 1968. The Court subsequently dismissed appellant's exceptions and on August 2, 1968, entered a final Decree.

The Decree provided, in pertinent part: ". . . Clayton Carter, Jr., and Loretta Carter, his wife, . . . are hereby restrained and enjoined from operating a trailer park upon their land or any part thereof situate in East Caln Township in this county, . . . and *they are ordered and directed to forthwith remove any and all house trailers now used as places of human habitation from said tract, as well as all such trailers which are designed for or intended for such use,*\* and they are further ordered and directed to desist from the use of any pipes, wells, pumps, cesspools, septic tanks and any other facilities devoted to or designed for use as part of any sewage disposal system or water supply facility now located upon said tract. . . ."

On August 23, 1968, appellee filed in the lower Court a petition for contempt of Court and a petition for enforcement of the Court's Final Decree. In the meantime, appellants filed an appeal in this Court which we non prossed on January 23, 1969. On May 1, 1969, a hearing was held by the lower Court on the petitions for contempt of Court and for enforcement of the Final Decree. At this hearing, appellee presented testimony to prove that appellants had not removed the house trailers and mobile homes from their land as mandated by the Decree, but were continuing to operate the trailer park as before. Appellants presented evidence to show that they were installing sewage facilities to comply with the various public health ordinances involved, and testified that they had not pressed their appeal in this Court because they thought that the improvements which they made would satisfy all the terms and requirements of the Decree. Appellants further testified

---

\*Italics throughout ours, unless otherwise noted.

that they had only become aware within the past week that any zoning matter was involved or included in the Decree.

On May 2, 1969, the lower Court entered an Order holding the appellant-husband *in contempt of Court.* The Court further provided (1) that *appellant might purge himself of the contempt by removing all of the house trailers from the part of the trailer park* situated in East Caln Township by June 1, 1969, and (2) that **if the appellant** refused to remove the trailers the following penalties would be imposed: $100 per day for the first week after June 1; $200 per day for the second week thereafter; and $300 per day for each subsequent day. The Court's lengthy Order further provided that if appellant failed to pay any of the penalties so assessed, he should be committed to the Chester County Farms until the penalties were paid or until he was otherwise discharged, with the further proviso that *no single period of imprisonment should exceed three months in duration,* but that if violations of the Decree continued beyond that three-month period, and if the payments were still not made, appellant would then be recommitted to Chester County Farms so long as that unfilled condition continued. It is from this Contempt Order that Carter appeals.

Appellant Carter presents two issues in this appeal. He first contends that the *Contempt Order of May 2, 1969, was punishing him for an indirect criminal contempt,* and, as such, exceeded the statutory limitations governing such punishment. We disagree; this was a civil contempt. He further contends that the lower Court erred in finding him in contempt because he had never been personally served with a copy of the Court's Order and did not have sufficient actual knowledge of its contents to make him liable for violating it. There is no merit, as we shall see, in any of appellant's contentions.

# I.

## Contempt

This Court, in *Brocker v. Brocker,* 429 Pa. 513, 241 A. 2d 336, recently discussed at great length the subject of contempt. There we said (pages 519-521) : "The Courts have always possessed the inherent power to enforce their Orders and Decrees by imposing penalties and sanctions for failure to obey or comply therewith. Commonwealth ex rel. Beghian v. Beghian, 408 Pa. 408, 184 A. 2d 270; Knaus v. Knaus, 387 Pa. 370, 127 A. 2d 669; Michaelson v. United States, 266 U.S. 42; Green v. United States, 356 U.S. 165; United States v. United Mine Workers of America, 330 U.S. 258; Commonwealth ex rel. v. Perkins, 124 Pa. 36, 16 Atl. 525; Penn Anthracite Mining Co. v. Anthracite Miners of Pennsylvania, 114 Pa. Superior Ct. 7, 174 Atl. 11; Commonwealth v. Sheasley, 102 Pa. Superior Ct. 384, 157 Atl. 27.

"Contempt is divided legally into two classes: (1) Civil Contempt and (2) Criminal Contempt, (a) direct contempt and (b) indirect contempt. Knaus v. Knaus, 387 Pa., supra; Philadelphia Marine Trade Assn. v. International Longshoremen's Assn., 392 Pa. 500, 140 A. 2d 814; Commonwealth ex rel. Beghian v. Beghian, 408 Pa., supra; Marco Industries, Inc. v. United Steelworkers of America, 401 Pa. 299, 164 A. 2d 205.

"The *dominant purpose** and objective of the Court's Order is the *controlling** factor in the determination of whether the contempt was civil or criminal. Not only is the dividing line between civil and criminal contempt sometimes shadowy or obscure, but the same facts or conduct may constitute or amount to both civil and criminal contempt. United States v. United Mine Workers of America, 330 U.S., supra. Moreover, it is clear that a Court can for present or past acts of misbe-

---

*Italics in *Brocker v. Brocker* Opinion.

612

haviour amounting to civil contempt impose an unconditional compensatory fine and/or a conditional fine and imprisonment, and such fine may be payable to the United States or to the Commonwealth or to the county or to the individual who was injured. United States v. United Mine Workers of America, 330 U.S., supra; McComb v. Jacksonville Paper Co., 336 U.S. 187; Gompers v. Bucks Stove & Range Co., 221 U.S. 418; Commonwealth ex rel. Beghian v. Beghian, 408 Pa., supra; Parker v. United States, 126 F. 2d 370.

". . .

"In United States v. United Mine Workers of America, 330 U.S., supra, the Supreme Court held that the trial Court properly found John L. Lewis guilty of indirect criminal contempt and the Union *guilty of both civil and criminal contempt.* . . . The Court said, inter alia (pages 298-299, 303-304) : 'Common sense would recognize that conduct can amount to both civil and criminal contempt. . . . The trial court also properly found the defendants guilty of civil contempt. *Judicial sanctions in civil contempt proceedings may, in a proper case, be employed for either or both of two purposes: to coerce the defendant into compliance with the court's order, and to compensate the complainant for losses sustained.* Gompers v. Bucks Stove & Range Co., supra, at 448, 449.' "

We said in *Knaus v. Knaus,* 387 Pa. 370, 127 A. 2d 669 (pp. 376-77) : *"The dominant purpose of a contempt proceeding determines whether it is civil or criminal.* If the dominant purpose is to vindicate the dignity and authority of the court and to protect the interest of the general public, it is a proceeding for criminal contempt. But where the act of contempt complained of is the refusal to do or refrain from doing some act ordered or prohibited primarily for the benefit of a private

---

*Italics in *Brocker v. Brocker* Opinion.

party, proceedings to enforce compliance with the decree of the court are civil in nature. *The purpose of a civil contempt proceeding is remedial, and judicial sanctions are employed (1) to coerce the defendant into compliance with the court's order,* and (2) in some instances to compensate the complainant for losses sustained."

This test and these legal principles have been iterated and reaffirmed on numerous occasions by the United States Supreme Court. In the recent case of *Shillitani v. United States,* 384 U.S. 364, the Court said (pages 369, 370-371) : " 'It is not the fact of punishment but rather its character and purpose that often serve to distinguish' civil from criminal contempt. Gompers v. Bucks Stove & Range Co., 221 U.S. 418, 441 (1911) . . .

*"The conditional nature of the imprisonment—based entirely upon the contemnor's continued defiance— justifies holding civil contempt proceedings absent the safeguards of indictment and jury,* Uphaus v. Wyman, 364 U.S. 388, 403-404 (1960) (Douglas, J., dissenting), provided that the usual due process requirements are met."

The three factors discussed in the appeal before us appear also in *Brocker v. Brocker,* 429 Pa., supra. In that case, as here, (1) the penalty was payable to the county; (2) imprisonment pending compliance was ordered; and (3) the appellant was given the opportunity to purge himself of the contempt. It is clear from the facts in this case that *the dominant purpose and objective of the Court's Order* of May 2, 1968, *was to compel appellant* Clayton Carter *to comply with the injunctive Decree which ordered the removal of the trailers.* This is made further evident by the final paragraph of the Court's Order: "We would point out further that if the defendants pursue the avenues open to them under the provisions of the Zoning Ordinance and obtain a valid

permit authorizing their continuance in or expansion of their business, they would then be in a position to seek a modification of the Final Decree. However, until that is done, or the Final Decree complied with as entered, Clayton Carter, Jr. is in contempt of Court."

That the dominant purpose and intent of the Court was to enforce compliance with its Order is further apparent from that part of its Contempt Order which gave Carter a grace period of one month to comply with the Order and the further opportunity to purge himself of all contempt of Court at any time thereafter by complying with and obeying the Court's Order. The conditional nature of the Contempt Order, which, we repeat, allowed appellant to purge himself of all contempt by complying with the Court's Order within a reasonable time, makes it clearly civil contempt.

## II.

### Notice

Appellant alleges that he should not be held in contempt of Court because he was not aware that the Decree required him to remove the trailers from that part of the trailer park situated in East Caln Township. The record clearly indicates that the appellant did attempt to provide water and sewage facilities for his trailer park, and he contends that he thought this was the sole problem involved. It is also true that the defendant was not personally served with a copy of the Decree.

This Court has previously held that before a defendant may be cited for contempt of an Order of Court it must be shown that he had actual knowledge of the Order. *Messmore's Estate*, 293 Pa. 63, 141 A. 724. The Third Circuit has recently reached a similar conclusion in *In Re Rubin*, 378 F. 2d 104 (3d Cir. 1967). In that case, the Court said (page 108) : "In order to

cite a person for contempt for violating a court order, two principles, each a corollary of the other, must, among other requirements, be established. The first of these is that it must be proved that the alleged contemnor had knowledge of the order which he is said to have violated. [Citations omitted]

"The corollary of this proposition is that the order which is said to have been violated must be specific and definite. [Citations omitted]."

Appellant received no formal education beyond the sixth grade level. He works in a paper mill as an air hammer operator. However, during the course of this litigation he has had the assistance of no fewer than eight different attorneys. It is difficult to believe that none of these attorneys made him aware of the issue of zoning and the pertinent provisions of the Ordinance in this case. Moreover, discussions which took place at several hearings *show that appellant had actual knowledge* that he was violating the zoning ordinance by maintaining trailers in the park, and that enforcement of this Ordinance had been consistently required by the Orders of the Court.

The sentence of contempt was not only legally and Constitutionally valid, it was also fair and justifiable.

Order affirmed, appellant to pay costs.

Mr. Justice JONES and Mr. Justice COHEN concur in the result.

---

DISSENTING OPINION BY MR. JUSTICE ROBERTS:

In order for a contempt conviction to be valid, it must be shown that the defendant was either personally served with a copy of the decree upon which the contempt is based or had actual knowledge of the decree. *Wilson v. North Carolina,* 169 U.S. 586, 18 S. Ct. 435 (1898); *In Re Rubin,* 378 F. 2d 104 (3d Cir. 1967); *Messmore's Estate,* 293 Pa. 63, 141 Atl. 724 (1928). Appellant was never served with a copy of the

decree, and, contrary to the indications in the majority opinion, there is neither a finding by the trial court that the appellant knew of the decree nor any evidence upon which such a finding could be based. Since an essential precondition to a conviction for contempt is missing from this case, it would be pure caprice to affirm the conviction.

Accordingly, I dissent.