UNITED STATES ex rel. Clayton
CARTER, Jr.

v.

William JENNINGS, Warden, Chester
County Farms, Chester County,
Pennsylvania.

Civ. A. No. 71–1321.

United States District Court,
E. D. Pennsylvania.

Nov. 18, 1971.

Edward K. Nichols, Jr., Philadelphia, Pa., for relator.

W. Robert Landis, Philadelphia, Pa., Law Offices of Glenvar E. Harman, Downingtown, Pa., for respondent.

## MEMORANDUM OPINION AND ORDER

VanARTSDALEN, District Judge.

Petitioner seeks a writ of habeas corpus to effectuate discharge from state custody imposed for contempt of court in failing to comply with a mandatory injunction directing him to remove certain trailers from his premises. The petition will be denied.

Most of the facts are summarized in the opinion of the Pennsylvania Supreme Court, East Caln Township v. Carter, 440 Pa. 607, 269 A.2d 703 (1970) [hereinafter referred to as East Caln Township], which was an appeal from the order of the Court of Common Pleas holding petitioner, Clayton Carter, in contempt of court. Petitioner and his wife purchased a property in 1966 and thereafter proceeded to expand a trailer park located on the property. The Township of East Caln and individual citizens of that township instituted an action against petitioner and his wife seeking a permanent injunction against the operation of the trailer park as being in violation of the township zoning ordinance. The Court of Common Pleas in the state court action entered a Decree nisi on April 8, 1968, and a final decree granting the injunction on August 2, 1968. An appeal was filed in the Pennsylvania Supreme Court which was non prossed on January 23, 1969, for failure of the petitioner to prosecute the appeal.

The township filed a petition to hold petitioner in contempt of court for noncompliance. A hearing on this petition was held on May 1, 1969. Petitioner presented evidence at that hearing and testified that he "had only become aware within the past week that any zoning matter was involved or included in the Decree." East Caln Township, *supra,* at 610, 269 A.2d at 705. At the hearing on May 1, 1969, the final injunction decree was read to petitioner verbatim and the petitioner indicated that he fully understood the order. On May 2, 1969, the Court of Common Pleas entered an order holding petitioner in contempt, but allowing petitioner to purge himself of contempt by removing all trailers from the site by June 1, 1969. The order further provided that if the trailers were not removed by June 1, 1969, daily fines would be imposed, and if the fines were likewise not paid, petitioner would be then confined to jail until the order was complied with.

On July 10, 1969, petitioner having failed to comply with either the injunction or the terms of the order whereby he could purge himself of contempt, the court on application issued a bench warrant. Although the sheriff actively attempted many times to serve the warrant, he was unsuccessful until May 26, 1971, more than two years after the contempt order was entered. During the intervening period, petitioner appealed the contempt order to the Pennsylvania Supreme Court, which court affirmed the contempt order. East Caln Township, *supra.*

On May 28, 1971, two days after his arrest on the bench warrant, the present petition for a writ of habeas corpus was filed in this court averring lack of "due process" in the contempt proceeding. A show cause order was entered by this court and pending disposition thereof, the petitioner was released from state custody on bail.

The petition alleged, inter alia, that "Relator * * * is willing to make every reasonable effort to terminate use of his said premises as a trailer park, as required by the Court, if he is set at large." (Paragraph 8 of the petition). In order to permit counsel to prepare for the hearing, and partially induced by the

averments of the petition and in order to afford petitioner an opportunity to comply with the statement that he would make every reasonable effort to terminate use of the premises as a trailer park, the hearing was delayed until October 27, 1971. At the hearing, testimony was taken and argument held; briefs were subsequently submitted.

Petitioner contends that his commitment for contempt of Court violated his federally protected constitutional right of "due process" because (1) the contempt of court was criminal rather than civil and the statutory procedural rights afforded one charged with a criminal contempt were disregarded; (2) petitioner was not personally served with a written copy of the injunction decree entered on August 2, 1968, the violation of which decree gave rise to the contempt order; and (3) the decree was and remains impossible for petitioner to comply with and therefore is constitutionally invalid. The first two of these issues were substantially raised and decided against petitioner in his direct appeal from the issuance of the injunction to the Pennsylvania Supreme Court. The third issue apparently was not raised on any prior occasion.

Preliminarily, it should be noted that the injunction was issued more than three years ago, and petitioner has at least had actual knowledge of the decree for two and a half years, i. e., from the time when the petition was read verbatim to him by the trial judge in open court. During this interim period the only apparent effort made by petitioner to comply with the injunction was a notice to vacate premises sent to all the tenants of the trailer park which was not done until June 8, 1971 after petitioner had finally been arrested on the bench warrant and after his discharge on bond pending disposition of the present petition. This lack of diligence is indicative of the complete disregard the petitioner has consistently shown throughout for the injunction and the orders of the court and clearly shows a lack of "good faith" attempt to comply with the order.

None of the mobile homes or trailers were in fact removed from the premises as of the date of the hearing in this court and no legal action has ever been taken by petitioner to compel compliance with the injunction despite clear-cut remedies available. As a matter of interest, one witness testified that he leased an area for his mobile home from petitioner in November of 1970 which not only was long after the injunction decree and the contempt order but was subsequent to the Supreme Court's affirmance of the contempt order. Although a portion of petitioner's property may have been in the adjoining township, this rental indicates that petitioner had every intention of continuing the operation of the trailer park. At the hearing, the petitioner's own testimony indicated that he had made no genuine effort to comply with the order.

Petitioner's first contention is that he was entitled to, but was not afforded, the statutory procedural rights of one charged with an indirect criminal rather than civil contempt. The Act of June 23, 1931, P.L. 925 [Pa.Stat. tit. 17, § 2047 (1962)], provides that a person charged with an indirect criminal contempt shall be entitled (1) to bail pending determination of the contempt proceeding; (2) reasonable notice and time to prepare a defense and (3) upon demand, a right to a speedy and public trial by jury. Petitioner merely asserts these rights were not granted to him, but does not particularize. Even if the contempt is determined to be criminal, the record fails to disclose that petitioner was denied any of the statutory procedural rights. He remained free from custody until long after the final determination of the contempt proceedings by the Supreme Court of Pennsylvania. He has made no contention and the record does not disclose that there was any lack of adequate opportunity to prepare and present his defense. Likewise, petitioner makes no claim that he ever sought, desired or demanded a jury trial. Therefore, even if it be assumed that he was entitled to the statutory protections of an indirect

criminal contempt proceeding, the record fails to disclose any denial of such procedures.

■ The Supreme Court of Pennsylvania decided the issue holding that the proceeding was that of a civil rather than a criminal contempt. East Caln Township, *supra*. Whether or not this determination of state statutory procedures by the Supreme Court of the State is a decision binding on this court, I find, independent of the decision of the Supreme Court of Pennsylvania, on the basis of the record before me, that the proceeding was civil, and not criminal in nature. The primary test between a civil and a criminal contempt proceeding is a determination of the dominant purpose of the contempt order. If the primary purpose is to vindicate the dignity and authority of the court to protect the interest of the general public, it is criminal. If it is remedial and *"judicial sanctions are employed (1) to coerce the defendant into compliance with the court's order,* and (2) in some instances to compensate the complainant for losses sustained"* then the contempt proceeding is civil. East Caln Township, *supra,* at 612–613, 269 A.2d at 706, quoting Knaus v. Knaus, 387 Pa. 370, 376–77, 127 A.2d 669, 672 (1956). The fact that the township, as a public entity, instituted the injunction and the subsequent contempt proceeding does not in and of itself make this contempt proceeding criminal in nature. The contempt order itself must be examined. In this case, the order clearly manifests that the purpose of the prospective imprisonment was to force compliance with the original order. As stated by the Supreme Court:

"That the dominant purpose and intent of the Court was to enforce compliance with its Order is further apparent from that part of its Contempt Order which gave Carter a grace period of one month to comply with the Order and the further opportunity to purge himself of all contempt of Court at any time thereafter by complying with and

obeying the Court's Order. The conditional nature of the Contempt Order, which, we repeat, allowed appellant to purge himself of all contempt by complying with the Court's Order within a reasonable time, makes it clearly civil contempt." *East Caln Township, supra,* at 614, 269 A.2d at 707.

Since the contempt proceeding and order were civil rather than criminal, petitioner's contention that he was denied "due process" by reason of the court's failure to comply with statutory procedural requirements for criminal contempt proceedings is without merit.

■ Petitioner contends, secondly, that he was not personally served with a written copy of the injunction decree; and also that petitioner had no knowledge of the order. Knowledge of an order of court, either actual or by service of notice, before being held in contempt for violation of that order is obviously a basic requirement of "due process," as was specifically recognized by the Pennsylvania Supreme Court. *Id.* at 614; citing Messmore's Estate, 293 Pa. 63, 141 A. 724 (1928); In Re Rubin, 378 F.2d 104, 108 (3rd Cir. 1967) (See cases cited at 108). The Pennsylvania Supreme Court held that although petitioner was never personally served with a copy of the order, he did have actual knowledge of the order. On the factual determination the Court noted, inter alia:

"Appellant received no formal education beyond the sixth grade level. He works in a paper mill as an air hammer operator. However, during the course of this litigation he has had the assistance of no fewer than eight different attorneys. It is difficult to believe that none of these attorneys made him aware of the issue of zoning and the pertinent provisions of the Ordinance in this case. Moreover, discussions which took place at several hearings *show that appellant had actual knowledge* that he was violating the zoning ordinance by maintaining trailers in the park, and that enforce-

ment of this Ordinance had been consistently required by the Orders of the Court." *East Caln Township, supra,* at 615, 269 A.2d at 707.

Mr. Justice Roberts, however, dissented stating "there is neither a finding by the trial court that the appellant knew of the decree nor any evidence upon which such a finding could be based." *Id.* at 616, 269 A.2d at 708. During the present habeas corpus hearing before this court, in answer to Mr. Justice Roberts' dissent, respondent proved that the trial judge read the injunction order to petitioner on May 1, 1969. Consequently, as of May 1, 1969, if not earlier, petitioner had actual knowledge of the decree of court.

While the issue of actual knowledge was properly raised in the Pennsylvania Supreme Court, it was abandoned at the hearing on the present petition for a writ of habeas corpus held on October 27, 1971, by petitioner during the oral argument. Petitioner chose to base his lack of notice argument strictly on the theory that even where actual notice is present, which he conceded, due process still requires that written notice be served on the party. This position is clearly incorrect as either actual knowledge or service will meet the requirements of due process. *See* In Re Rubin, *supra.* However, petitioner has attempted to revive the contention that he did not have actual knowledge of the injunction by setting forth this contention in the brief filed subsequent to the hearing. Since this issue is of considerable significance, it will be reconsidered here.

■ During this court's hearing on October 27, 1971, certain facts came to light on the question of actual knowledge which indicates that the decision of the majority of the Pennsylvania Supreme Court was correct. Firstly, Mr. Carter had at least eight attorneys during which the injunction order was in force. It is difficult for this court to believe that all of these attorneys were guilty of gross neglect in failing to inform their client of the terms of the decree and its effect on him. It should be noted that respondent offered to call one of the attorneys as a witness on rebuttal to prove that

petitioner had received actual knowledge from that attorney. This court, ruling on the side of caution, refused to permit the witness to testify because of the possible infringement of the attorney-client privilege. Secondly, Mr. Carter's conduct during the period of time prior to the issuance of the contempt order indicates that he had actual knowledge of the terms of the injunction. The very fact that he appealed the injunction to the Supreme Court of Pennsylvania in January of 1969 shows that he must have been aware of the decree at that time. Thirdly, the trial transcript of the contempt hearing of May 1, 1969, at pages 34–35, indicates that the final decree of August 2, 1968, was read verbatim to Mr. Carter in open Court, and Mr. Carter indicated that he understood the terms of the order. (The contempt order was dated May 2, 1969). Fourthly, when the petitioner testified at the October 27, 1971 hearing, on two different occasions he admitted that in 1969 he knew he had to get the trailers off the property. Other than these two admissions, the petitioner denied that he had any knowledge of the injunction's terms prior to his arrest. Generally, however, his answers were evasive and reflected poorly on his credibility. After reviewing the facts surrounding this contempt order, I reach the independent finding that although the petitioner was not served with the decree of August 2, 1968, he had actual knowledge of the injunction order prior to the court finding him in contempt of court. Petitioner's failure to comply with the order continued sufficiently long after actual knowledge of the order to constitutionally permit the court to hold him in contempt for failure to comply.

■ The plaintiff thirdly contends that the requirement of the county court's order that he remove all the trailers from his property was unreasonable in a constitutional sense. This generalized contention has been utilized by petitioner to argue three distinct arguments: (1) The petitioner could not have complied with the injunction which was finalized on August 2, 1968, be-

cause the time period extended to him to comply was inadequate to remove the trailers and, therefore, the contempt order was violative of "due process." (2) The petitioner could not have purged himself of contempt as set forth in the contempt order of May 1, 1969, because the thirty day grace period extended by the court was an inadequate period within which he could remove the trailers, and therefore this also violated "due process." (3) The commitment of the relator for failing to remove the trailers when the court could have ordered forcible ouster through the sheriff was unreasonable, arbitrary, and in violation of "due process." Some of these arguments were not voiced at the hearing on October 27, 1971, and none were before the Pennsylvania Supreme Court when it made its decision. Therefore, petitioner has failed to exhaust his state remedies as to these issues. However, as the case is presently before me on other issues, these matters will also be determined.

■ The petitioner clearly had sufficient time within which to comply with the final injunctive decree issued on August 2, 1968. He had actual knowledge by at least May 1, 1969, and it would appear probable that he received actual knowledge during August of 1968, if not as early as April of 1968 when the decree nisi issued. He clearly had sufficient time to comply with the decree by May 26, 1971, when he was arrested. Other than his own assertions, there is nothing to indicate that the order could not have been complied with by May 2, 1969 or by June 1, 1969, the final date within which he had an opportunity to purge himself of contempt.

The order of August 2, 1968, did not limit the time period within which the petitioner was required to comply. The order merely required him to remove the trailers "forthwith." Black's Law Dictionary (1951) defines "forthwith" as:

"Immediately; without delay, directly, hence within a reasonable time under the circumstances of the case; promptly and with reasonable dispatch. * *

Within such time as to permit that which is to be done, to be done lawfully and according to the practical and ordinary course of things to be performed or accomplished. * * * The first opportunity offered."

It is clear that the order provided for a reasonable period within which to comply and that a more than reasonable period elapsed prior to the issuance of the contempt order. The contempt order itself allowed an additional grace period of a full month before any penalties or sanctions would be imposed.

Petitioner's contention that the thirty day grace period after the contempt order was not a sufficient time to comply with the terms of the order requiring removal of the trailers is rejected. The requirements of the order of May 2, 1969, including removal of the trailers required nothing more than did the injunction of August 2, 1968. Therefore, altogether ten months had been extended to petitioner to remove the trailers from his property. In addition the thirty day period itself would have been sufficient for petitioner to comply either by getting voluntary cooperation from the trailer owners or by resorting to appropriate legal process.

There is no evidence that prior to June of 1971 the petitioner made any attempt whatsoever to inform the trailer owners that they would have to leave the property within thirty days or any other period of time. The evidence is altogether to the contrary. As previously indicated, one of the trailer owners testified that the petitioner leased him property in November of 1970. Notice to quit the property was not given to the owners until June of 1971, more than two years after the end of the thirty day grace period.

Even if this court were to assume that petitioner could not have achieved a voluntary withdrawal of the trailers, there is no evidence that he could not have resorted to appropriate eviction proceedings. The petitioner could have served the trailer owners with a Notice to Quit the property ordering them to

**1398**

remove themselves within thirty days of service. See Pa.Stat. tit. 68 § 250.501 (1965) (Landlord & Tenant Act). Petitioner finally elected to utilize this remedy in June of 1971. Serving an appropriate notice to quit could easily have been done within the thirty day grace period.

The petitioner sought neither voluntary removal nor eviction proceedings to comply with the order. Even if either or both of these approaches would have taken more than thirty days to effectuate, once preliminary steps had in good faith been taken, petitioner could have sought an extension of the grace period. I will not assume that the county court would· have denied petitioner an extension of time within which to remove all the trailers if convinced of a good faith effort to comply, thereby enabling the petitioner to avoid the contempt order and any fine or imprisonment. Instead petitioner chose to ignore the court's order.

■ The petitioner's last contention that the order requiring him to oust the tenants, and imprisoning him for failing to do so when the court could have exercised its power and ousted the tenants forcibly through the sheriff was unconstitutional is without merit. This court knows of no authority supporting this proposition and none has been cited to the court. While East Caln Township may have been able to remedy the situation by other means than that chosen, there is no authority that would require it to institute eviction proceedings and use the services of the sheriff instead of requiring the petitioner through an injunction, as a wrongdoer, from taking action to remedy the wrongful condition that he, himself, created where, as here, he has the power so to do. See Pa.Stat. tit. 68 § 250.501 (1965).

In summation, it is my conclusion, after holding a hearing and reviewing the record of this case, that the contempt order of May 2, 1969, was constitutionally valid. It is clear to this court that Mr. Carter knew that his use of the land was in violation of the zoning laws, that he knew the injunction required him to remove the trailers from his land, and that he voluntarily and obstinately chose not to comply with the order. East Caln Township has attempted for more than five years to compel Mr. Carter to comply with the township zoning ordinance, the validity of which ordinance has not been challenged. The petitioner has taken full advantage of all of the legal procedures applicable in order to delay enforcement of the township ordinance, and when these failed, simply refused to comply with the court's order. It is clear that he has attempted to use every means possible to avoid and frustrate the valid orders of the Court of Common Pleas.

The petition for writ of habeas corpus is denied.